Filed 3/19/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CARSON BARENBORG, | B289766 |
| | (Los Angeles County |
| Plaintiff and Appellant, | Super. Ct. No. BC597033) |
| | |
| v. | |
| | |
| SIGMA ALPHA EPSILON FRATERNITY, | |
| | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Law Office of Martin N. Buchanan and Martin N. Buchanan; Girardi Keese and Amanda L. McClintock for Plaintiff and Appellant.

Cokinos Young and Michael C. Osborne for Defendant and Respondent.

## INTRODUCTION

Appellant Carson Barenborg was injured at a party hosted by a local chapter of respondent Sigma Alpha Epsilon Fraternity, a national fraternity. Appellant sued respondent for negligence. The trial court granted respondent's motion for summary judgment, concluding respondent owed appellant no duty of care and was not vicariously liable for its local chapter's actions.

Appellant challenges these conclusions on appeal. She contends respondent owed her a duty of care based on: (1) a special relationship between respondent and the local chapter; (2) a special relationship between respondent and appellant; and (3) a voluntary assumption of duty under the negligent undertaking doctrine. She also contends respondent is vicariously liable for the local chapter's actions based on an agency relationship. We hold that respondent owed no duty to protect appellant from the actions of the local chapter and is not vicariously liable for them. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The National Fraternity*

Respondent is a non-profit corporation operating as a national fraternal organization. Based in Illinois, respondent has over 200 local chapters and 13,500 undergraduate members across the United States. According to respondent's mission statement, its mission is to "promote the highest standards of friendship, scholarship

2

and service for [its] members . . . ." Among other goals, respondent seeks "[t]o develop, maintain, and enforce standards and expectations for the conduct of [respondent's] members within and outside of the Fraternity."

Respondent's bylaws, the "Fraternity Laws," govern respondent's operation and are binding on its local chapters. They provide for an all-volunteer "Supreme Council," which acts as respondent's board of directors. Under the Fraternity Laws, the Supreme Council is responsible for granting charters to undergraduate chapters. Respondent permits its local chapters to use its name and insignia and provides them with educational and other resources. It also arranges for its local chapters' purchase of property and liability insurance.

The Fraternity Laws require local chapters to pay dues, submit certain reports, and allow inspection. But they specify: "In other respects, the Chapter Collegiate shall be virtually independent of [respondent]. Each Chapter Collegiate shall make its own arrangements as to Chapter-Collegiate house or other living quarters; fix its own dues, assessments, and charges; elect its own officers; and have complete control of its own activities. **No Chapter Collegiate . . . shall have any authority to act for or bind [respondent].** . . . Each Chapter Collegiate has its own By-Laws . . . . [Respondent] has no power to control the activities or operations of any Chapter Collegiate . . . ."

The Fraternity Laws establish eligibility requirements for membership in the fraternity, but local chapters are

3

otherwise free to extend invitations for membership to students as they see fit.  Under the Fraternity Laws, respondent has the authority to discipline both individual members and local chapters for good cause.  For example, it may fine, suspend, or expel an individual member, remove any officer of a local chapter from office, suspend or revoke a chapter's charter, or place the chapter under the control of an alumni commission.  Finally, the Fraternity Laws provide that each local chapter must have at least one chapter advisor.  Each chapter advisor must visit his chapter at least twice a month and report to respondent on any conditions requiring special attention.

A guide entitled, "Minerva's Shield" contains respondent's risk-management policies, which are binding on every local chapter and individual member of the fraternity.  They cover issues such as the use of alcohol, sexual conduct, violence, hazing, property management, and event planning.  For example, Minerva's Shield prohibits holding open parties or serving alcohol to anyone who is underage or is visibly intoxicated.  It also provides that any construction for events must be done by third-party professionals.

B. *The Local Chapter*
California Gamma Chapter (Cal. Gamma) was an unincorporated association that operated as respondent's local chapter at the University of Southern California (USC).  An alumni housing corporation, separate and distinct from respondent, owned and operated Cal. Gamma's fraternity

house.  In the years and months before appellant's injury, Cal. Gamma and its members were involved in multiple disciplinary violations, such as excessive and underage drinking, various public disturbances, and sexual misconduct.  Cal. Gamma also held multiple parties on Thursday nights, in violation of USC policies, which prohibited social events between Monday and Thursday.

C. *The Incident and Disciplinary Action*

On October 10, 2013, a Thursday, Cal. Gamma and other local fraternities held large parties.  Appellant, a 19-year-old student at another university at the time, attended those parties with friends.  The group eventually made its way to Cal. Gamma's party, in the backyard of the local chapter's house.  A Cal. Gamma member was serving alcohol without checking IDs.  By the time appellant arrived, she had consumed five to seven alcoholic beverages and some cocaine.  Cal. Gamma members had set up a makeshift dance platform, about six or seven feet high, using wooden tables.  Appellant and her friends decided to climb on top of the platform to dance.  When appellant reached the top of the platform, another person, either inadvertently or intentionally, knocked her off of the platform.  Appellant fell to the ground and sustained serious injuries.

After the incident, respondent placed Cal. Gamma under the authority of an alumni commission and prohibited possession of alcohol in the chapter's house.  In 2014, after

5

Cal. Gamma members violated the alcohol ban, respondent suspended Cal. Gamma's charter.

### D. *The Suit and the Motion for Summary Judgment*

Appellant sued respondent, USC, and others, asserting a single cause of action for negligence. Following discovery, respondent moved for summary judgment. The trial court granted the motion, concluding respondent owed appellant no duty of care and was not vicariously liable for Cal. Gamma's actions.[1] This appeal followed.

### DISCUSSION

Appellant challenges the trial court's grant of summary judgment for respondent. She argues the court erred in concluding that respondent owed her no duty of care and was not vicariously liable for Cal. Gamma's negligence.

"We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court." (*Manibog v. MediaOne of Los Angeles, Inc.* (2000) 81 Cal.App.4th 1366, 1369.) "Summary judgment is

---

[1] USC also moved for summary judgment, but the trial court denied the motion after finding triable issues of fact whether USC owed appellant a duty of care. USC petitioned for a writ of mandate, and this court granted the petition, holding that USC owed "no duty to protect members of the public from the conduct of a third party at an off-campus fraternity party." (*University of Southern California v. Superior Court of County of Los Angeles* (2018) 30 Cal.App.5th 429, 436 (*USC*).)

6

appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*), quoting *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

### A. *Respondent Owed Appellant No Duty of Care*

A plaintiff suing for negligence must prove "duty, breach, causation, and damages." (*Regents*, *supra*, 4 Cal.5th at p. 618.) Whether a duty of care existed is a question of law, and thus "particularly amenable to resolution by summary judgment." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465.)

Although every person generally "has a duty to exercise reasonable care to avoid causing injury to others" (*USC, supra,* 30 Cal.App.5th at p. 440), "as a general matter, there is no duty to act to protect others from the conduct of third parties." (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 234, 235 (*Delgado*).) There are, however, a few recognized exceptions to this general "no-duty-to-protect rule . . . ." (*Id.* at p. 235.) One such exception is the "'special relationship'" doctrine. (*Ibid.*) Under this doctrine, "[a] defendant may owe a duty to protect the plaintiff from third party conduct if the defendant has a special relationship

7

with either the plaintiff or the third party." (*USC, supra,* at p. 440.) Another exception, relevant here, is the "negligent undertaking doctrine." (See *Delgado, supra*, at pp. 248-249.) Under this doctrine, "a person who has no affirmative duty to act but voluntarily acts to protect another has a duty to exercise due care if certain conditions are satisfied." (*USC, supra,* at p. 448.)

Appellant argues that the rule precluding a duty to protect from third-party conduct has no application here, and thus no exception to the rule is necessary. She maintains that "Cal. Gamma was not just some unrelated third party" but a "recognized chapter of [respondent]," subject to respondent's control. She further contends we should determine whether respondent owed her a duty of care solely by analyzing the factors discussed in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*). As explained below, we disagree,

First, Cal. Gamma, an unincorporated association, is a separate legal entity, distinct from respondent. (See Code Civ. Proc., § 369.5, subd. (a) [unincorporated association may sue and be sued in its own name]; *Cal-Metal Corp. v. State Bd. of Equalization* (1984) 161 Cal.App.3d 759, 765 [unincorporated associations are "entitled to general recognition as separate legal entities"].) Appellant does not argue that the alter-ego doctrine applies to the relationship

8

between Cal. Gamma and respondent.[2]  Thus, Cal. Gamma was a third party for purposes of the duty analysis.

Next, in *Rowland*, our Supreme Court identified several factors courts should consider in determining whether to depart from the general principle that "'[a]ll persons are required to use ordinary care to prevent others being injured as the result of their conduct.'"[3]  (*Rowland, supra,* 69 Cal.2d at pp. 112-113.)  As the Court explained more recently, these factors "may, on balance, justify excusing or limiting a defendant's duty of care," where such a duty would otherwise exist.  (*Regents*, *supra*, 4 Cal.5th at p. 628.)  Thus, plaintiffs alleging a defendant had a duty to protect them must establish: (1) that an exception to the

---

[2]     "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests.  [Citation.]  In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation . . . ."  (*Mesler v. Bragg* Management Co. (1985) 39 Cal.3d 290, 300.)

[3]     These factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."  (*Rowland*, *supra*, 69 Cal.2d at p. 113.)

general no-duty-to-protect rule applies; *and* (2) that the *Rowland* factors support imposition of the duty. (See *ibid.*; *Delgado, supra,* 36 Cal.4th at p. 235.) Because, as discussed below, we conclude no exception applies here, we need not consider the application of the *Rowland* factors to the facts of this case.

### 1. *No Special Relationship Existed between Respondent and Cal. Gamma*

#### a. *Applicable Law*

Appellant argues there was a special relationship between respondent and Cal. Gamma, creating a duty to control Cal. Gamma's conduct. "[A] duty to control may arise if the defendant has a special relationship with the foreseeably dangerous person that entails an ability to control that person's conduct." (*Regents, supra,* 4 Cal.5th at p. 619.) Examples of special relationships with the persons posing the risks include "a parent with dependent children," "a custodian with those in its custody," and "an employer with employees when the employment facilitates [an] employee's causing harm to third parties." (Rest.3d Torts, Liability for Physical and Emotional Harm, § 41.)

"'The key in each [special relationship] is that the defendant's relationship with . . . the tortfeasor . . . places the defendant in the best position to protect against the risk of harm.'" (*Grand Aerie Fraternal Order of Eagles v. Carneyhan* (Ky. 2005) 169 S.W.3d 840, 850 (*Carneyhan*), quoting *Hamilton v. Beretta U.S.A. Corp.* (N.Y. 2001) 750

10

N.E.2d 1055, 1061; accord, *Bogenberger v. Pi Kappa Alpha Corporation, Inc.* (Ill. 2018) 104 N.E.3d 1110, 1123 (*Bogenberger*) [quoting *Carneyhan*]; see also *Donaldson v. Young Women's Christian Assn. of Duluth* (Minn. 1995) 539 N.W.2d 789, 792 ["To reach the conclusion that a special relationship exists, it must be assumed that the harm to be prevented by the defendant is one that the defendant is in a position to protect against and should be expected to protect against"].)  Thus, the defendant's ability to control the person who caused the harm must be such that "if exercised, [it] would meaningfully reduce the risk of the harm that actually occurred." (*Carneyhan*, *supra,* at p. 851; accord, *Bogenberger, supra*, at p. 1123 [quoting *Carneyhan*]; *Sparks v. Alpha Tau Omega Fraternity, Inc.* (Nev. 2011) 255 P.3d 238, 245 (*Sparks*) [same].)

No reported California decision has considered the existence of a special relationship between a national fraternity and its local chapters.  However, most out-of-state courts to consider the issue have held that national fraternities owe no duty to control their local chapters.  For example, in *Alumni Association v. Sullivan* (Pa. 1990) 572 A.2d 1209 (*Sullivan*), the Supreme Court of Pennsylvania held that a national fraternity owed no duty to control a local chapter's conduct in supplying alcohol to an underage member, reasoning that national fraternities are unable to monitor the activities of their respective chapters.  (*Id.* at pp.  1209-1210, 1213.)  In *Sparks*, the Supreme Court of Nevada held that a national fraternity had no duty to control

11

and supervise a local chapter's tailgate party, at which the plaintiff was assaulted.  (*Sparks, supra*, 255 P.3d at p. 246.) Citing *Sullivan*, the court reasoned that national fraternities can discipline errant chapters after the fact, but cannot monitor their local chapters' day-to-day activities.  (*Ibid.*) And, in *Carneyhan*, in which an underage guest died in a single-car collision after drinking at a local chapter's party, the Supreme Court of Kentucky held that the national fraternity had no duty to control its local chapter, explaining that the fraternity's ability to revoke the chapter's charter did not enable it to control the conduct of the chapter's social functions.  (*Carneyhan, supra*, 169 S.W.3d at pp. 843, 853-854.)

Other courts have similarly held that national fraternities owed no duty to control the actions of local chapters or their members.  (See, e.g., *Walker v. Phi Beta Sigma Fraternity* (La.Ct.App. 1997) 706 So.2d 525, 529 [national fraternity had no duty to prevent plaintiff's hazing-related injury because it "was not in a position to control the action of its chapters on a day-to-day basis"]; *Colangelo v. Tau Kappa Epsilon Fraternity* (Mich.Ct.App. 1994) 517 N.W.2d 289, 290, 291-292 (*Colangelo*) [refusing to impose duty to control local chapter where two underage drivers struck and killed a pedestrian after drinking at chapter's party; imposing duty would require "continuous contact" and convert national fraternity to "a central planning and policing authority"]; *Bogenberger, supra*, 104 N.E.3d at p. 1123 [where new fraternity member died after night of

12

compelled excessive drinking at local chapter's event, national fraternity had no duty to control local chapter]; but see *Grenier v. Commissioner of Transportation* (Conn. 2012) 51 A.3d 367, 389 (*Grenier*) [fact issue existed whether national fraternity owed duty to control local chapter].)

Two themes emerge from the decisions finding no special relationship between national fraternities and local chapters. First, courts have concluded that the existence of general policies governing the operation of local chapters and the authority to discipline them for violations does not justify imposition of a duty on national fraternities. (See, e.g., *Sullivan, supra*, 572 A.2d at p. 1213 ["the power to discipline an errant chapter after the fact" is insufficient to create a duty to control local chapters]; *Sparks, supra*, 255 P.3d at p. 245 [citing *Sullivan* for the same proposition]; *Carneyhan, supra*, 169 S.W.3d at p. 854 [same]; see also *Garofalo v. Lambda Chi Alpha Fraternity* (Iowa 2000) 616 N.W.2d 647, 654 ["a policy or code of behavior may authorize discipline by . . . the fraternity, but it does not change the nature of the[] relationship. [¶] . . .We are unaware of any legal authority which would elevate the fraternity's failure to enforce its 'Policy on Alcoholic Beverages' to an actionable civil tort"].) This court has recently endorsed a similar proposition in *USC*, approvingly citing *A.M. v. Miami University* (OhioCt.App. 2017) 88 N.E.3d 1013 for the proposition that a "university's ability to discipline a student for off-campus conduct does not impose a duty to control the

13

conduct of the student." (*USC, supra*, 30 Cal.App.5th at p. 448.)

Second, courts have recognized that national fraternities cannot monitor the day-to-day activities of local chapters contemporaneously, and have concluded that absent an ability to do so, there can be no duty to control. (See, e.g., *Sullivan, supra*, 572 A.2d at p. 1213 [imposing duty to control on a national fraternity is unjustified because it "does not possess the resources to monitor the activities of its chapters contemporaneously with the event"]; *Carneyhan, supra*, 169 S.W.3d at p. 854 ["the burden upon the [national fraternity] of affirmatively monitoring its local chapters . . . would be excessive"]; see also *Colangelo, supra*, 517 N.W.2d at p. 292 ["impos[ing] a duty upon the national fraternity to supervise the daily activities of its local chapters" would be impractical and would result in a significant increase in operating costs].)

These conclusions accord with the principles underlying the special-relationship exception: absent an ability to monitor the day-to-day operations of local chapters, the authority to discipline generally will not afford a national fraternity sufficient ability to prevent the harm and thus will not place it in a unique position to protect against the risk of harm. (See, e.g., *Carneyhan, supra*, 169 S.W.3d at pp. 850-851; *Sullivan, supra*, 572 A.2d at p. 1213.) We therefore turn to applying these principles to the facts of this case.

### b. *Analysis*

Appellant argues that respondent had control over Cal. Gamma's day-to-day affairs. She points to the Fraternity Laws and Minerva's Shield, notes that respondent had many disciplinary tools at its disposal, and observes that respondent had the authority to supervise Cal. Gamma's compliance through the visits of a chapter advisor. She contends that had respondent suspended or revoked Cal. Gamma's charter, or placed it under the governance of an alumni commission, Cal. Gamma "would not have built a dangerous wooden dance platform in violation of Minerva's Shield."[4]

Appellant's argument relies on the same policies and disciplinary powers this court and others have rejected as

---

[4] Appellant also suggests that earlier disciplinary action would have prevented Cal. Gamma from holding the unauthorized Thursday night party. But it was not the unauthorized timing of the party that led to appellant's injury, as appellant could as easily have fallen from the makeshift platform during a Friday or Saturday party. Because the timing of the party was not a proximate cause of appellant's injury, we need not consider this argument. (See *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 359 ["coincidental causation—an allegation that some breach created an opportunity for an injury to occur, without increasing the risk of that injury occurring—is insufficient" to establish liability]; Rest.3d Torts, Liability for Physical and Emotional Harm, § 30 ["An actor is not liable for harm when the tortious aspect of the actor's conduct was of a type that does not generally increase the risk of that harm."].)

insufficient to establish a special relationship.  (See *USC*, *supra*, 30 Cal.App.5th at p. 448; *Sullivan*, *supra*, 572 A.2d at p. 1213; *Sparks*, *supra*, 255 P.3d at p. 245.)  Moreover, her contention that prior disciplinary action would have prevented her injury is speculation.  It is questionable whether prior discipline for unrelated violations would have deterred Cal. Gamma from erecting a makeshift dance platform.  (See *Carneyhan*, *supra*, 169 S.W.3d at pp. 843, 853-854 [revocation of local chapter's charter before guest died in a single-vehicle collision after drinking at chapter's party, "would have produced an outcome completely unrelated to the harm that occurred"].)  Respondent did not own or possess the chapter's house, and Cal. Gamma members could have constructed the makeshift platform regardless of the actions appellant suggests respondent should have taken, viz., suspending or revoking the chapter's charter or placing it under an alumni commission.  Indeed, while under the ostensible control of an alumni commission, Cal. Gamma members violated the alcohol ban respondent imposed after appellant's injury.  Ultimately, regardless of its policies and disciplinary powers, respondent was unable to monitor and control Cal. Gamma's day-to-day operations, and it thus owed no duty to protect appellant from Cal. Gamma's conduct.  (See, e.g., *USC,* at p. 448; *Sullivan*, at p. 1213; *Sparks*, at p. 245.)

In support of her position, appellant cites *Grenier*, in which the Supreme Court of Connecticut concluded a genuine dispute existed whether the fraternity owed a duty

to control its local chapter. (*Grenier, supra*, 51 A.3d at p. 389.) As respondent notes, the national fraternity in *Grenier*, unlike respondent, owned the local chapter's house and paid for improvements to the house. (*Ibid.*) Beyond this obvious distinction, however, we believe the court's analysis was inconsistent with the legal principles that drive the special-relationship doctrine.

*Grenier* involved a suit by the estate of a fraternity member who suffered fatal injuries in a car accident while returning from a chapter event. (*Grenier, supra*, 51 A.3d at pp. 372-374.) The event did not take place on the chapter's premises, and the accident was unrelated to either alcohol use or hazing. (*Id.* at pp. 373-374, 381.) Yet in concluding that the national fraternity "was sufficiently involved with the activities of [the local chapter] to owe [the member] a duty of care," the court considered that the national fraternity owned the local chapter's house and had guidelines regulating hazing and alcohol use, and that alcohol at the chapter's house was purchased using members' dues. (*Id.* at p. 389.)

This discussion of "'sufficient[] involve[ment]'" looks at control as an abstract concept and does not measure the defendant's actual ability to protect against the harm that occurred. The court's analysis did not engage in the key inquiry of the special-relationship doctrine: whether the defendant was in a unique position to protect against the risk of harm. (See, e.g., *Carneyhan, supra*, 169 S.W.3d at p. 851; *Bogenberger, supra*, 104 N.E.3d at p. 1123; *Sullivan*,

17

*supra*, 572 A.2d at p. 1213.) *Grenier*'s analysis and holding are against the weight of authority, and we find its reasoning unpersuasive.[5] Adopting the reasoning of the

---

[5]    In her reply brief, appellant also cites *Marshall v. University of Delaware* (Super.Ct. New Castle, 1986, C.A. No. 82C-OC-10) 1986 Del. Super. LEXIS 1374, a Delaware trial court order denying summary judgment for two national fraternities. (*Id.* at pp. *24-25, *32.)  There, the plaintiff, a non-student, sued the fraternities and a university for injuries he sustained while attempting to intervene in a fight between members of the fraternities.  (*Id.* at pp. *2-*3.)  The court concluded the national fraternities had a duty to control their local chapters' actions because they had the power to revoke chapters' charters, and in the court's opinion, could enforce their policies "by a program of random checks . . . ."  (*Id.* at pp. *24, *25.)  The court's reliance exclusively on the national fraternities' disciplinary powers is contrary to the authorities discussed above.  (See, e.g., *USC*, *supra*, 30 Cal.App.5th at p. 448; *Sullivan*, *supra*, 572 A.2d at p. 1213; *Sparks*, *supra*, 255 P.3d at p. 245.)  It is also unclear whether this analysis represents Delaware law.  In a subsequent appeal from the grant of summary judgment for the university, the Supreme Court of Delaware indicated that authority to discipline is insufficient to constitute control, stating, "While the University clearly has influence over fraternities and can impose sanctions effectively rising to the level of dissolution . . . the University has no legal duty to protect non-students who are injured by University students off-campus."  (See *Marshall v. University of Delaware* (Del. 1993) 633 A.2d 370 [Table of unpub. decisions] [1993 Del. Lexis 363 at p. *4].)

Appellant additionally cites *Brown v. Delta Tau Delta* (Me. 2015) 118 A.3d 789 (*Brown*) and *Morrison v. Kappa Alpha Psi Fraternity* (La.Ct.App. 1999) 738 So.2d 1105 (*Morrison*).  Neither case supports her position.  In *Brown*, the court held a duty of
(*Fn. is continued on the next page*.)

18

majority of courts, we conclude no special relationship existed between respondent and Cal. Gamma.

### 2. *No Special Relationship Existed between Respondent and Appellant*

Appellant contends that regardless of any special relationship between respondent and Cal. Gamma, respondent had a special relationship with appellant based on her status as an invitee on premises subject to respondent's control. As noted, "[a] defendant may have an affirmative duty to protect the plaintiff from the conduct of a third party if the defendant has a special relationship with the plaintiff." (*USC, supra*, 30 Cal.App.5th at p. 444.) California courts have recognized a special relationship between a person who possesses or controls land and invitees on the land. (*Id.* at p. 444.)

Respondent did not own or possess Cal. Gamma's house. Appellant argues respondent nevertheless controlled

care existed based on the national fraternity's control of the fraternity's house, a separate theory we discuss below. (*Brown, supra,* at p. 796.) In *Morrison*, the court held the fraternity owed a duty to prevent hazing by its local chapters based on a theory of negligent undertaking, another separate issue we discuss below. (*Morrison, supra*, at p. 1118, 1119 [stating the national fraternity "assumed a duty to regulate, protect against and prevent hazing by its collegiate chapters"].) Neither court discussed the special-relationship doctrine or the principles that underlie it as they apply to national fraternities' relationships with their local chapters.

19

Cal. Gamma's premises because the Fraternity Laws "govern[ed] the ownership of chapter houses," because respondent promulgated rules on social events, risk management, and alcohol use, and because respondent arranged for property and liability insurance coverage for its local chapters. She cites no authority, however, for the proposition that a defendant's policies and rules applying to the conduct of another party, or the defendant's involvement in that party's procurement of insurance, establish the defendant's control over the party's premises.

This court rejected a similar argument in *USC*. (See, *USC, supra*, 30 Cal.App.5th at p. 446 ["USC's policies governing use of alcohol and social events . . . along with [its safety officers'] patrols to enforce those policies, did not constitute an exercise of control over [the local fraternity's] property."].) And the ties between respondent and Cal. Gamma's house do not approach what courts have found sufficient to constitute an exercise of control over premises. (See *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1161-1162 [triable issue of fact as to defendants' control of land on which plaintiff was injured; defendants maintained the lawn surrounding the land and constructed a fence enclosing the entire lawn]; *Southland Corp. v. Superior Court* (1988) 203 Cal.App.3d 656, 666-667 [triable issue of fact as to defendants' control of vacant lot adjacent to defendants' store; store customers often parked there, defendant's lease authorized their nonexclusive use of the land, and store employees had taken action to remove loiterers from there].)

20

Accordingly, because respondent did not control the premises on which appellant was injured, there was no special relationship between them.  (See *USC, supra,* at p. 444.)

### 3. *The Negligent Undertaking Doctrine Is Inapplicable*

Appellant contends there are triable issues of fact whether respondent assumed a duty of care based on the negligent undertaking doctrine.  Under that doctrine, a defendant who undertakes to render services to another may owe a duty of care either to the other person or to a third person.  (*Delgado, supra*, 36 Cal.4th at p. 249, fn. 8.)  To establish a duty of care to a third person based on the negligent undertaking doctrine, a plaintiff must show:  (1) the defendant undertook to render services to another; (2) the services were of the kind the defendant should have recognized as necessary for the protection of third persons; and (3) either (a) the defendant's failure to exercise reasonable care increased the risk of harm beyond what existed without the undertaking, (b) the undertaking was to perform a duty owed by the other to the third persons, or (c) a harm was suffered because the other or third persons relied on the undertaking.  (See *Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 614; Rest.3d Torts, Liability for Physical and Emotional Harm, § 43.)

"[T]he scope of any assumed duty depends upon the nature of the undertaking."  (*Delgado, supra*, 36 Cal.4th at p. 249.)  The defendant "must specifically have undertaken

to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative duty to perform that undertaking carefully." (*Artiglio v. Corning, Inc.*, *supra*, 18 Cal.4th at pp. 614-615.) For example, "[m]erely because a supermarket . . . 'chooses to have a security program' that includes . . . a roving security guard does not signify that the proprietor has assumed a duty to protect invitees from third party violence." (*Delgado*, *supra*, at p. 249.)

Appellant argues that through its rules and policies, respondent undertook to provide a service to Cal. Gamma, creating a duty to protect Cal. Gamma's guests. According to her, the relevant service was, as stated in respondent's mission statement, "'[t]o develop, maintain, and enforce standards and expectations for the conduct of [respondent's] members within and outside of the Fraternity.'"

The record is clear, however, that any undertaking of services to Cal. Gamma did not include direct day-to-day oversight and control of Cal. Gamma's activities or the conduct of its members. As reflected in our discussion of respondent's relationship with Cal. Gamma, there is no evidence suggesting that respondent had the right or ability to conduct such preventive monitoring of its over 200 local chapters. Assuming respondent undertook any specific duty through its rules, policies, and guidelines, such a duty was educational, rather than one of direct supervision and control, as appellant maintains. (See *USC*, *supra*, 30 Cal.App.5th at p. 449 [rejecting argument that university

22

assumed duty to protect local chapter's invitees by adopting policies on alcohol use and social events and providing a security patrol, because "a college has little control over . . . noncurricular, off-campus activities, and it would be unrealistic for students and their guests to rely on the college for protection in those settings"]; *Smith v. Delta Tau Delta, Inc.* (Ind. 2014) 9 N.E.3d 154, 163 [national fraternity assumed no duty to protect local chapter's members despite its disciplinary powers and relevant policies:  "While it certainly was the commendable objective of the national fraternity to actively engage in programs to discourage hazing and alcohol abuse, . . . the specific services [it] assumed . . . did not rise to the level of assuring protection of the [plaintiffs] from hazing and the dangers of excessive alcohol consumption"].)  Accordingly, the negligent undertaking doctrine is inapplicable.

B. *Respondent Is Not Vicariously Liable for Cal. Gamma's Conduct*

Appellant argues there are triable issues of fact as to respondent's vicarious liability based on an agency relationship between respondent and Cal. Gamma.  "[A] principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the agency."  (*Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 691.)  ""'Agency is the relationship which results from the manifestation of consent by one person to another that the

23

other shall act on his behalf and subject to his control, and consent by the other so to act . . . .'"" (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571, quoting *Edwards v. Freeman* (1949) 34 Cal.2d 589, 592.) While the existence of an agency relationship is "typically a question of fact, when "'the evidence is susceptible of but a single inference,'"" summary judgment may be appropriate. (*Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 281.)

For an agency relationship to exist, the asserted principal must have a sufficient right to control the relevant aspect of the purported agent's day-to-day operations. (See *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 478 [in sexual harassment suit by franchisee's employee, no agency relationship between franchisor and franchisee where, although the franchisor "vigorously enforced" standards and procedures involving the product, general store operations, and brand image, it did not have "a general right of control" over the "relevant day-to-day aspects" of franchisee's operations]; *Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 960 [no agency relationship between financial services company and merchants because company had no right to control how merchants operated their day-to-day businesses].)

Here, the summary judgment record permits no reasonable inference that respondent had a sufficient right to control Cal. Gamma's day-to-day activities. Respon-dent's Fraternity Laws provide that respondent "has no power to control the activities or operations of any Chapter

24

Collegiate" and that subject to certain duties, local chapters "shall be virtually independent of [respondent]" and "have complete control of [their] own activities." Each chapter must "make its own arrangements as to . . . living quarters," may "fix its own dues, assessments, and charges," and "elect[s] its own officers . . . ."

In support of her argument that respondent nevertheless had sufficient control over Cal. Gamma's operations, appellant cites respondent's rules, policies, and disciplinary powers discussed above. But the existence of standards regulating some aspects of local chapters' activities is insufficient. (Cf. *Patterson v. Domino's Pizza, LLC, supra*, 60 Cal.4th at p. 497 [a "comprehensive operating system" and the existence of a franchise contract containing "standards, procedures, and requirements that regulate each store for the benefit of both parties" is not enough to create an agency relationship].) And the disciplinary powers respondent possessed under the Fraternity Laws did not amount to a right to control Cal. Gamma's day-to-day operations or the physical details of a party. (See *Smith v. Delta Tau Delta, Inc., supra*, 9 N.E.3d at p. 164 [national fraternity's power to impose "post-conduct sanctions" does not allow it to control local fraternity members' conduct and thus "does not establish the right to control for purposes of creating an agency relationship"]; cf. *Scheffel v. Oregon Beta Chapter of Phi Kappa Psi Fraternity* (Or.Ct.App. 2015) 359 P.3d 436, 455 (*Scheffel*) [national fraternity's "remedial" powers allowed day-to-day control

25

over activities to remain with local chapter].)  Accordingly, no triable issue of fact exists as to respondent's lack of vicarious liability for Cal. Gamma's conduct. [6]

---

[6]     Here, too, appellant cites *Marshall v. University of Delaware* (Super.Ct. Oct. 8, 1986, C.A. No. 82C-OC-10) 1986 Del. Super. LEXIS 1374, discussed above, in which the trial court concluded that triable issues of fact existed whether an agency relationship existed between the national fraternities and their local chapters.  (*Id.* at *22, *32.)  Without citing legal authority, the court concluded the fraternities had a right to control the day-to-day activities of their local chapters based solely on the fraternities' disciplinary powers.  (*See id.* at *21-*22, *31-*32.)  Such powers are insufficient to establish vicarious liability based on an agency relationship.  (See *Smith v. Delta Tau Delta, Inc.*, *supra*, 9 N.E.3d at p. 164; *Scheffel*, *supra*, 359 P.3d at p. 455.)

**DISPOSITION**

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.