Filed 12/23/25  Graiwer v. Shokrian CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JONATHAN LEHRER GRAIWER, | B341273 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV04722) |
| v. | |
| JASMIN M. SHOKRIAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Law Offices of Daniel J. Bramzon & Associates, Daniel J. Bramzon and Eric M. Post for Defendant and Appellant.

Davidovich Stone Law Group, Niv Davidovich and Jodi C. Rosner for Plaintiff and Respondent.

_____

This is an appeal from a judgment entered in an unlawful detainer action in favor of the landlord, plaintiff and respondent Jonathan Lehrer Graiwer, after the trial court granted his motion for summary judgment against the tenant, defendant and appellant Jasmin M. Shokrian.

Shokrian argues the trial court erred in granting summary judgment because the three-day notice to pay rent or quit dated February 8, 2024 overstated the amount of unpaid rent due from September 2023 to February 2024. According to Shokrian, although Graiwer sent three letters notifying her of rent increases during her tenancy, those letters failed to increase lawfully the initial monthly rental rate of $2,750 to $3,034.16. She claims the first letter, dated October 28, 2017, was a nullity because Graiwer mailed it 34 days — instead of 35 days — before the first rent increase stated therein was to take effect on December 1, 2017. Under Shokrian's theory, because her monthly rental obligation remained $2,750 after December 1, 2017, the other letters from October 2018 and September 2019, respectively, sought rent increases above the percentage limitations imposed by local rent control ordinances. Thus, Shokrian claims she owed only $16,500 for the six-month period at issue, and not the $18,204.96 Graiwer had demanded in the three-day notice to pay rent or quit.

Although Shokrian challenged the validity of the October 28, 2017 letter in her opposition to the summary judgment motion, we conclude she failed to preserve for appeal her new theory that the invalidity of that notice caused the October 2018 and September 2019 letters to seek rent increases greater than that allowed by local law. Shokrian advances no other legal theory establishing a triable issue as to whether the

2

three-day notice to pay rent or quit dated February 8, 2024 overstated the amount of rent due. We thus affirm the judgment without addressing whether the October 28, 2017 letter provided Shokrian with sufficient notice of the rent increase scheduled to take effect on December 1, 2017.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

We summarize only those facts that are relevant to our disposition of this appeal.

In August 2016, Graiwer agreed to lease to Shokrian a residence in Los Angeles, which lease term began on September 1, 2016 and was scheduled to conclude on August 31, 2017. Shokrian agreed to an initial base rent of $2,750 per month due on the first of each month. After the one-year term expired, the lease became a month-to-month tenancy.

Graiwer sent three letters to Shokrian informing her of rent increases. In the first letter, which was dated October 28, 2017, Graiwer stated, "[E]ffective December 1, 2017," Shokrian's rent would "increase by $82.50 to $2,832.50 per month from the current rent of $2,750.00 per month." In a letter dated October 2, 2018, Graiwer informed Shokrian her rent would "increase by $84.97 to $2,917.47 per month from the current rent of $2,832.50 per month" "effective December 1, 2018 . . . ." In a letter dated September 11, 2019, Graiwer said, "[E]ffective **December 1, 2019**, [Shokrian's] rent . . . w[ould] increase by

---

[1] We derive our Factual and Procedural Background in part from the parties' admissions in their filings. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2 [utilizing this approach].)

$116.69 to **$3,034.16** per month from the current rent of $2,917.47 per month." Whereas the October 2, 2018 letter indicates it was "***HAND-DELIVERED***" and the September 11, 2019 correspondence includes the phrase "***MAILED AND HAND-DELIVERED***," no such notation appears in the October 28, 2017 letter. In his declaration submitted in support of the summary judgment motion, Graiwer attested he "mailed these 30-day notices to [Shokrian] more than 30 days before they became effective."

On February 7, 2024, Graiwer served Shokrian with a three-day notice to pay rent or quit dated January 30, 2024, wherein he demanded $39,444.08 for rent owed from September 2020 to September 2021 (COVID notice to pay or quit).[2] On February 8, 2024, Graiwer served Shokrian with a three-day notice to pay rent or quit dated February 8, 2024, wherein he demanded $18,204.96 for rent owed from September 2023 to February 2024, which he claimed constituted six months' unpaid rent at the monthly rate of $3,034.16 (February 8, 2024 notice to pay or quit).[3] In his declaration, Graiwer attested, "After three days following service of each [t]hree-day [n]otice, [Shokrian] failed to pay the rent demanded in either [n]otice and . . . continued to fail to pay the rent

---

[2] In his declaration, Graiwer claimed, "This rent became due on August 1, 2023, after the local moratorium on the collection of back rent lifted for COVID rent during the 'transition period.'"

[3] In the February 8, 2024 notice to pay or quit, Graiwer stated the rent for each month during that six month period came due on the first of the month, e.g., the rent for February 1, 2024 to February 29, 2024 came due on February 1, 2024.

4

demanded.  [Shokrian] continue[d] to occupy the . . . [p]roperty [as of the date of the declaration, to wit, May 30, 2024].”

On February 26, 2024, Graiwer filed a verified complaint for unlawful detainer against Shokrian.  Shokrian later filed a verified answer to the complaint.

Graiwer moved for summary judgment, arguing he was entitled to judgment in his favor based on the COVID notice to pay or quit and the February 8, 2024 notice to pay or quit.  In her opposition to the motion, Shokrian argued (1) the COVID notice to pay or quit was defective because it demanded rent accrued more than 12 months before Graiwer served the notice, and (2) the February 8, 2024 notice to pay or quit was defective because it overstated the amount of rent due.  Regarding the latter argument, Shokrian maintained that Graiwer’s letter dated October 28, 2017 did not effectively raise the rent because he mailed the letter to Shokrian fewer than 35 days before the effective date of the new rent, that is December 1, 2017, thereby running afoul of Civil Code section 827 and Code of Civil Procedure section 1013.[4]

The trial court heard and granted Graiwer’s motion on June 10, 2024.  The court found the COVID notice to pay or quit was defective because it demanded rent accrued more than 12 months before it had been served.  As for the February 8, 2024 notice to pay or quit, the court ruled Civil Code section 827 does not require a notice of rent increase to be mailed to a tenant at least 35 days before it becomes effective, and that Shokrian may have waived her right to challenge the validity of the

_____

[4] We describe in greater detail this portion of Shokrian’s opposition in Discussion, part B, *post*.

October 28, 2017 letter by paying the increased rent. The court thus granted summary judgment for Graiwer based on the February 8, 2024 notice to pay or quit.

On July 5, 2024, the trial court entered judgment in favor of Graiwer and against Shokrian. In the judgment, the court declared that Graiwer was entitled to immediate possession of the premises, and awarded Graiwer past due rent of $18,204.96, holdover rent of $10,214.13 accrued from March 1, 2024 to June 10, 2024, and interest and costs. Shokrian appealed from the judgment on September 20, 2024.[5]

---

[5] Although the record contains a certificate of mailing indicating the trial court clerk served upon Graiwer's counsel a July 5, 2024 minute order that "constitute[d] notice of entry of Judgment," the certificate does not indicate the clerk served the minute order on Shokrian or her counsel. The indices for the appellant's appendix and the clerk's transcript indicate the record does not contain (1) any other notice of entry of judgment, or (2) any filed-endorsed copy of the judgment that had been served on Graiwer or Shokrian. Accordingly, Shokrian timely filed her notice of appeal within 180 days of the date of entry of the judgment. (See Cal. Rules of Court, rule 8.104(a)(1) ["[A] notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment."].)

# APPLICABLE LAW AND STANDARD OF REVIEW

## A.     Applicable Law

"A 'tenant of real property is guilty of unlawful detainer' where the tenant, among other circumstances, 'is in default for nonpayment of rent.' [Citations.]  'The basic elements of unlawful detainer for nonpayment of rent . . . are (1) the tenant is in possession of the premises; (2) that possession is without permission; (3) the tenant is in default for nonpayment of rent; (4) the tenant has been properly served with a written three-day notice; and (5) the default continues after the three-day notice period has elapsed.' [Citation.]" (*KB Salt Lake III, LLC v. Fitness Internat., LLC* (2023) 95 Cal.App.5th 1032, 1045 (*KB Salt Lake III, LLC*).)

"A notice that seeks rent in excess of the amount due is invalid and will not support an unlawful detainer action. [Citation.]  In addition, a three-day notice must be served within one year after the rent 'becomes due.' [Citation.]  If the landlord waits over a year to sue for unpaid rent, he or she is limited to collecting such rent in a standard breach of contract action, 'which results only in a money judgment without restitution of the demised property.' [Citation.]" (*Levitz Furniture Co. v. Wingtip Communications, Inc.* (2001) 86 Cal.App.4th 1035, 1038.)

Civil Code section 827, subdivision (b)(1) provides in pertinent part:  "In all leases of a residential dwelling . . . from week to week, month to month, or other period less than a month, the landlord may increase the rent provided in the lease or rental agreement, upon giving written notice to the tenant, as follows, by either of the following procedures:  [¶] (A) By delivering a copy to the tenant personally.  [¶] (B) By serving a copy by mail under

7

the procedures prescribed in Section 1013 of the Code of Civil Procedure."

Subdivision (b)(2) of section 827 of the Civil Code in turn states: "If the proposed rent increase for that tenant is 10 percent or less of the rental amount charged to that tenant at any time during the 12 months before the effective date of the increase, either in and of itself or when combined with any other rent increases for the 12 months before the effective date of the increase, the notice shall be delivered at least 30 days before the effective date of the increase, and subject to Section 1013 of the Code of Civil Procedure if served by mail." As relevant here, Code of Civil Procedure, section 1013, subdivision (a) provides, "[A]ny period of notice and any right or duty to do any act or make any response within any period or on a date certain after service of the document . . . shall be extended five calendar days, upon service by mail, if the place of address and the place of mailing is within the State of California . . . ."

"A notice of a rent increase that is not given in the minimum number of days prior to the effective date of the increase stated in the notice is a nullity and ineffective. If the notice is not served with sufficient time between the date of service and the stated effective date of the increase, the landlord cannot merely extend the effective date even if the tenant is informed of the extension and relies on the notice. The landlord must give another notice." (10 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 34:74.)

## B.    Standard of Review

" 'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." ' [Citation.]" (*Barenborg v. Sigma*

*Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.) "Under summary judgment law, ' "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.] In making this determination, "the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, [but] it must nevertheless determine what any evidence or inference could show or imply to a reasonable trier of fact." ' [Citation.]" (*Lares v. Los Angeles County Metropolitan Transportation Authority* (2020) 56 Cal.App.5th 318, 331–332.) " 'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.]" (*Barenborg*, at p. 76.) " ' "We are not bound by the trial court's reasons for granting summary judgment because we review the trial court's ruling, and not its rationale." ' [Citations.]" (*KB Salt Lake III, LLC, supra*, 95 Cal.App.5th at p. 1046.)

" ' "Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned.' " [Citation.] To succeed[,] . . . [an appellant] must first establish error. . . . " '[T]he most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct.' [Citation.] It is the appellant who bears the burden of overcoming that presumption." [Citation.]' [Citation.] To 'rebut[ ] the presumption of correctness accorded to the trial court's decision,' the appellant must ' " ' "supply[ ] the reviewing court with some cogent argument supported by legal analysis and

9

citation to the record." ' [Citation.]" [Citations.]' [Citation.]"
(*Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 953–954.)

## DISCUSSION

On appeal, Shokrian argues the trial court erred in granting summary judgment because "it was undisputable that [Graiwer] imposed an illegal rent increase resulting in the [February 8, 2024] notice [to pay or quit] being overstated." (Boldface & underscoring omitted.) Specifically, Shokrian claims her rent obligation from September 2023 to February 2024 was only $16,500 — and not the $18,204.96 demanded in the notice to pay or quit — because Graiwer failed to increase lawfully the monthly rate from $2,750 to $3,034.16. In support of her position, Shokrian argues that Graiwer's letters dated October 28, 2017, October 2, 2018, and September 11, 2019 were defective.

Shokrian's appellate claim hinges on her legal theory that because Graiwer allegedly failed to afford Shokrian sufficient notice of the rent increase provided in the October 28, 2017 letter, Graiwer's letters dated October 2, 2018 and September 11, 2019 purported to increase the rent in excess of caps imposed by a Rent Increase Bulletin issued by the Los Angeles Housing Department (Rent Increase Bulletin). (Discussion, part A, *post.*) Shokrian forfeited that theory by failing to present it below. (Discussion, part B, *post.*) Shokrian makes no other argument in support of her position there is a triable issue of material fact regarding whether the February 8, 2024 notice to pay or quit

10

demanded an excessive amount of rent. (Discussion, part C, *post*.) Accordingly, we affirm the trial court's judgment.[6]

## A.  Shokrian's Claim of Error Hinges on the Limits Imposed by the Rent Increase Bulletin

Shokrian argues Graiwer could not increase the rent from $2,750 per month to $2,832.50 via the letter dated October 28, 2017 because he mailed the letter to Shokrian 34 days — rather than 35 days — before the date the increase was set to take effect, to wit, December 1, 2017. Shokrian thus argues the increase was ineffective under Civil Code section 827, subdivision (b) and Code of Civil Procedure section 1013, subdivision (a).

Next, Shokrian asserts that because there was no effective rent increase on December 1, 2017, the October 2, 2018 letter would have raised Shokrian's rent by "5.98%."[7] Shokrian argues the October 2, 2018 letter was "defective and ineffective to change" the rent because it sought a rent increase that "exceed[ed] the 3% cap for 2018" set forth in the Rent Increase Bulletin. Similarly, under Shokrian's theory, because Graiwer failed to increase lawfully the rent in his October 28, 2017 and October 2, 2018 correspondence, Graiwer was, in effect,

---

[6] In light of this conclusion, we do not address whether the October 28, 2017 letter gave sufficient notice of the increase in monthly rent from $2,750 to $2,832.50.

[7] By our calculation, the difference between the initial monthly rent of $2,750 and the $2,917.47 monthly rent sought in the October 2, 2018 letter is approximately 6.09 percent. This disparity between our and Shokrian's respective calculations does not affect our disposition of this appeal.

11

attempting to raise the rent from $2,750 to $3,034.16 effective December 1, 2019 in his letter dated September 11, 2019. Shokrian asserts the "increase from $2750 to [$3,034.16] is 10.3%, exceeding the 4% cap for that year" provided in the Rent Increase Bulletin and "requiring the provision of 90 days' notice under [Civil Code section] 827[, subdivision (b)](3)(A) . . . ."

In arguing that 90 days' notice was required, Shokrian relies on the current version of Civil Code section 827, subdivision (b)(3)(A) instead of the version of section 827 in effect in September 2019 that provided for a shorter notice period.[8] Be that as it may, the fate of Shokrian's appellate claim rests

_____

[8] The *current* version of Civil Code section 827, subdivision (b)(3)(A) provides in relevant part, "If the proposed rent increase . . . is greater than 10 percent of the rental amount charged to that tenant at any time during the 12 months before the effective date of the increase, . . . the notice shall be delivered at least 90 days before the effective date of the increase, and subject to Section 1013 of the Code of Civil Procedure if served by mail." (See Civ. Code, § 827, subd. (b)(3)(A).) The version of Civil Code section 827 that was in effect in September 2019 did not include subdivision (b)(3)(A). (See Stats. 2004, ch. 568, § 1.) Under subdivision (b)(3) of that version of the statute, for a rent increase greater than 10 percent, "the minimum notice period required pursuant to [subdivision (b)(2)] shall be increased by an additional 30 days[, meaning the tenant is entitled to 60 days' notice], and subject to Section 1013 of the Code of Civil Procedure if served by mail." (See Stats. 2004, ch. 568, § 1.) Thus, even if the September 11, 2019 letter sought a rent increase in excess of 10 percent and Graiwer mailed (but did not personally deliver) it to Shokrian on that date, the correspondence provided Shokrian with more than the 65 days' notice that was required by the then applicable version of Civil Code section 827, subdivision (b)(3).

12

entirely on the limits imposed by the Rent Increase Bulletin.  Her challenge to the validity of the rent sought in the October 2, 2018 letter relies upon the 3 percent limit imposed by the Rent Increase Bulletin.  Shokrian's assertion the September 11, 2019 letter illegally raised the rent to $3,034.16 is in turn premised on (1) the invalidity of the October 2, 2018 letter and (2) the 4 percent cap imposed by the Rent Increase Bulletin.  As set forth below, Shokrian has forfeited these arguments.

**B.      Shokrian Forfeited Her Legal Theory Predicated on the Rent Increase Bulletin by Failing To Raise It Below**

"' 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments."' [Citation.]  . . . . 'Ordinarily the failure to preserve a point below constitutes a [forfeiture] of the point.  [Citation.]  This rule is rooted in the fundamental nature of our adversarial system:  The parties must call the court's attention to issues they deem relevant.  " 'In the hurry of the trial many things may be, and are, overlooked which could readily have been rectified had attention been called to them.  The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.' " '  [Citation.]  'Indeed, if this were permitted procedure, parties opposing and losing summary judgment motions could attempt to embed grounds for reversal on appeal into every case by their silence.'  [Citation.]" (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698 (*Meridian Financial Services, Inc.*).)

As noted above, Shokrian's legal theory that Graiwer failed lawfully to raise the monthly rent from $2,750 to $3,034.16 depends on the caps set forth in the Rent Increase Bulletin.  We

13

conclude Shokrian failed to preserve for appeal her arguments based on the Rent Increase Bulletin. Because this issue is intertwined with this court's prior ruling denying Shokrian's motion for judicial notice of that document, we first turn to that motion.

Concurrent with her opening brief, Shokrian filed a motion for judicial notice of the Rent Increase Bulletin, which she stated had been "issued by the Los Angeles Housing Department" and "identif[ied] allowable rent increases for properties subject to the Los Angeles Rent Stabilization Ordinance" (LARSO), codified in "Los Angeles Municipal Code ('LAMC') § 151.00 et seq." Shokrian asserted, "LAMC § 151.06(D) provides that the rent may only be increased by an amount 'as determined and published by the [Los Angeles Housing] Department.' [Citation.]" (Quoting LAMC, § 151.06(D).) She argued the Rent Increase Bulletin was judicially noticeable pursuant to Evidence Code section 452, subdivision (c) and section 459, subdivision (a) "[a]s an official act of a local executive agency . . . ."

In the motion, Shokrian admitted she did not ask the trial court to take judicial notice of the Rent Increase Bulletin. She claimed not to have sought judicial notice below because "the parties agreed that a 3% increase was permitted for 2017 and 2018, and that a 4% increase was permitted in 2019. This was undisputed throughout the entirety of the proceedings, and the parties took it as a given that only 3% was permitted." Conspicuously absent from her motion for judicial notice was any record citation supporting her claim the aforesaid limits for rent increases were "undisputed throughout the entirety of the proceedings . . . ."

14

Graiwer opposed Shokrian's motion for judicial notice. Graiwer argued, inter alia, that the Rent Increase Bulletin is "irrelevant to the issues preserved for review" because Shokrian did not present it below and "[t]here is no mention of allowable rent increases in [Shokrian's o]pposition" to the summary judgment motion. Graiwer further contended there was no need for him to present evidence concerning whether he had "lawfully imposed [rent] increases" because Shokrian did not cite the Rent Increase Bulletin in opposing the summary judgment motion. "For instance, LAMC Section 151.06[,] which provides for automatic adjustments based on the Consumer Price Index, also provides that if the landlord pays all costs of electricity and/or gas, the landlord can adjust the rent by an additional . . . two percent. None of this evidence was before the trial court . . . ."[9]

Upon considering the parties' submissions, the presiding justice denied Shokrian's motion for judicial notice approximately two weeks before Shokrian filed her reply brief.

Shokrian does not ask us to reconsider that ruling or claim to have preserved for appeal her argument that the alleged invalidity of the October 28, 2017 letter caused the October 2, 2018 and September 11, 2019 letters to seek rent

---

[9] (See LAMC, § 151.06(D) ["The maximum rent or maximum adjusted rent may be increased in an amount based on the Consumer Price Index – All Urban Consumers averaged for the twelve (12) month period ending September 30, of each year, as determined and published by the Department on or before May 30, of each year . . . . If the landlord pays all the costs of electricity and/or gas services for a rental unit then the maximum rent or maximum adjusted rent may be increased an additional one percent (1%) for each such service paid by the landlord, not to exceed a total of two percent (2%)."].)

increases higher than LARSO permitted.[10] She does complain, however, that she "merely sought to have this Court judicially notice the applicable law," and that the Rent Increase Bulletin "is critical to assess the validity of subsequent rent increases when the prior[, October 28, 2017,] rent increase was not properly made."

We agree with Graiwer that Shokrian failed to "preserve[ ] for review" her arguments premised on the Rent Increase Bulletin. In Shokrian's opposition to the summary judgment motion, she argued the letter dated October 28, 2017 did not increase the rent because Graiwer mailed it to her fewer than 35 days before the increase was scheduled to take effect on December 1, 2017. She did not, however, argue that because the October 28, 2017 letter was invalid, the percentage rent increases Graiwer sought via the October 2, 2018 and September 11, 2019 letters exceeded those permitted under LARSO. In fact, she did not mention the October 2, 2018 and September 11, 2019 correspondence at all. Instead, she vaguely claimed to have been "owed an offset for every rent increase that was made after [the October 28, 2017 letter] which violated LARSO," and that, because that initial letter "was a legal nullity[,] . . . each subsequent increase was likewise invalid."

Because Shokrian failed to apprise the trial court and Graiwer of her theory that the October 2, 2018 and September 11, 2019 letters purported to increase the monthly

_____

[10] (See *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 509, fn. 6 [noting that an "appellate ruling does not become law of the case unless it reflects a decision on the merits considered by a panel of three justices and agreed upon by the majority"].)

16

rental rate above increases permitted by LARSO, she cannot raise that theory on appeal.  (See *Simplon Ballpark, LLC v. Scull* (2015) 235 Cal.App.4th 660, 668, 670 [holding that an appellant must provide the trial court and the respondent with "sufficient notice of the issue presented or the relief requested" to avoid forfeiture].)

We decline to excuse Shokrian's forfeiture for three reasons.  First, even though Graiwer informed Shokrian and this court of his position that Shokrian is raising a "new theor[y] on appeal," Shokrian does not ask us to exercise our discretion to consider that new theory.  Second, this case is an unlawful detainer action that "involves 'a private dispute and does not implicate matters of public interest or policy.'  [Citation.]"  (See *Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 700.)  Third, permitting Shokrian to raise her new theory more than a year after the trial court granted summary judgment would undermine the legislative purpose of our state's unlawful detainer statutory scheme, that is, " ' " 'provid[ing] an expeditious remedy for the recovery of possession of real property.' " ' [Citation.]"  (See *KB Salt Lake III, LLC*, *supra*, 95 Cal.App.5th at p. 1045.)

## C.   Shokrian Fails Otherwise To Show That a Reasonable Factfinder Could Conclude the February 8, 2024 Notice To Pay or Quit Overstated the Rent Due

In her reply brief, Shokrian argues we "need not" pass upon "the validity of the [October 2, 2018 and September 11, 2019] rent increases" because "it cannot be reasonably disputed that, since [Graiwer] failed to make a valid rent increase, the rent never changed from $2750, and therefore the notice demanding

17

$3,034.16 per month was overstated."  Shokrian does not further explain why she believes a rational factfinder could conclude "the rent never changed from $2750" without evaluating whether the October 2, 2018 and September 11, 2019 rent increases were valid.  Accordingly, we do not address Shokrian's unadorned contention further.  (See *Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 699 [" ' "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " ' "].)  Because Shokrian fails to demonstrate the judgment entered in Graiwer's favor was erroneous, we affirm.

## DISPOSITION

We affirm the trial court's judgment.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.

18