Filed 9/17/20  Annie G. v. Glacial Garden Skating Arenas, LLC CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANNIE G., a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> GLACIAL GARDEN SKATING ARENAS, LLC, et al., <br><br> Defendants and Respondents. | B293351 <br><br> (Los Angeles County Super. Ct. No. BC624620) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Reversed with directions.

Herzog, Yuhas, Ehrlich & Ardell, Ian Herzog, Evan D. Marshall, Normandy Kidd; Law Offices of Stephen Glick and Stephen Glick for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, Gary L. Hoffman, Maria K. Pleše; Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, Mark G. Bonino and Emma B. Lloyd for Defendants and Respondents.

Annie G., a nine-year-old figure skater, was sexually assaulted by her coach Donald J. Vincent. Through her guardian ad litem, Annie G. sued Vincent, the United States Figure Skating Association (USFSA) and the Professional Skaters Association (PSA), as well as the skating rinks where Vincent had coached, seeking to hold them liable for their negligence in failing to protect her and to report Vincent's misconduct to the appropriate authorities. Annie G. challenges the trial court's order sustaining without leave to amend Glacial Garden Skating Arenas, LLC (Skating Arena) and Ron White's[1] (collectively Glacial Garden) demurrer to her third amended complaint. The trial court found that Glacial Garden owed Annie G. no duty of care because Annie G. was never a skating student with Glacial Garden and the sexual abuse occurred after Glacial Garden had terminated Vincent for inappropriate conduct with other children. We reverse the judgment with instructions.

## BACKGROUND

This appeal comes to us after the trial court sustained a demurrer without leave to amend and so we recite the facts as alleged in the pertinent complaints.

In June 2007, Glacial Garden hired Vincent as a figure skating coach. Glacial Garden confirmed Vincent's USFSA and

---

[1] Ron White owned and operated Skating Arena, which is no longer an existing business entity.

PSA memberships;[2] however, it did not perform a background check before hiring him.[3]

At Skating Arena, Vincent demonstrated "boundary violating behaviors" with his minor skating students. These included giving piggyback rides to young boys, "engaging in horseplay," "holding hands with at least one minor student," and "sitting too closely" to other students. In September and December 2007, Glacial Garden's skating director and Vincent's direct supervisor, Jacqui Palmore, reprimanded Vincent at least twice for inappropriate behavior with minor students. Then, in August 2008, Glacial Garden fired Vincent when a staff member caught him in a dark locked room with a minor skater. The minor was hiding under a bench where Vincent sat. Someone at Skating Arena, possibly White, reported Vincent's conduct to the USFSA and PSA as required by their rules of conduct. However, the report did not result in an inquiry into Vincent's fitness as a coach.

That same month, after Vincent was terminated from Glacial Garden, Vincent brought one of his minor skating students to another skating rink, Paramount Iceland (Iceland). Vincent and that student would often arrive and leave the rink together and, on

---

[2] USFSA and PSA are the two governing skating associations that are responsible for credentialing coaches. They each have a code of ethics, mandatory reporting obligations, grievance procedures, and disciplinary proceedings for charges of misconduct.

[3] Annie G. and Glacial Garden appear to agree that, had Glacial Garden performed a background check, it would have shown that Vincent was fired from his prior job after he got into an altercation with an adult. This alleged fact, however, does not appear in any of Annie G.'s four complaints nor do the parties cite to where it is found in the record.

several days per week, the student was in Vincent's custody for the entire day. When Vincent first arrived at Iceland, Darlene Sparks, Iceland's skating director, noted that Vincent isolated his student from other coaches and students.[4] Sparks knew about the incident in the locked room at Skating Arena and that Glacial Garden fired Vincent. Nevertheless, by January 2009, Iceland had hired Vincent as a staff coach to teach one-on-one classes to minor skating students.

Sometime in 2009, while coaching at Iceland, Vincent started coaching Annie G. Sparks recommended Vincent as a coach for Annie G. and helped her family negotiate a price for private lessons. From the time he began to coach Annie G., Vincent harassed, molested, and abused her. He isolated her from other skaters and coaches, fondled her, threatened her, and touched her inappropriately. In 2009 or 2010, another coach found Annie G. and Vincent alone in the "coaches only" room at Iceland.

In the spring of 2011, Vincent started homeschooling Annie G. at his residence, and the sexual abuse escalated. Annie G. spent Monday through Friday with Vincent and was alone with him for several hours per day, "studying at his home, eating meals prepared by him, riding in his car to the skating rink, and participating in one-on-one coaching sessions on and off the ice." Other coaches, parents, and employees at Iceland complained to Sparks that Vincent was not a licensed teacher and should not be homeschooling Annie G. From 2009 to 2011, Sparks also received reports that Vincent was acting inappropriately with Annie G., assuming a parental role with her, touching her inappropriately,

---

[4] Annie G.'s original complaint alleged that Sparks witnessed Vincent isolating his skating students as early as 2008.

4

holding her hand in public off of the ice, and "reaching down inside her pants to insert tailbone crash pads." He violently sexually assaulted Annie G. at his home in the fall and winter of 2011.

In December 2011, Iceland fired Vincent "for suspected child molestation and sexual abuse of his minor skating students." Sparks reported Vincent's misconduct towards Annie G. and another skating student to the Los Angeles County Sheriff's Department and the USFSA. She also contacted the Los Angeles Department of Children and Family Services (DCFS) to report that Annie G. was in the custody of a "suspicious person," however, the report led to a misdirected investigation of Annie G.'s parents instead of Vincent. DCFS interviewed Annie G. about the suspected abuse, but she was unable to tell the social worker about the abuse because she was afraid of Vincent's threats that he would harm her if she said anything. For whatever reason, Sparks never alerted Annie G.'s parents about Vincent's misconduct.

After Iceland fired Vincent, he took Annie G. to another rink, Skating Edge Ice Arena (Skating Edge), where he continued to coach and abuse her for another year until his arrest in January 2013. He was convicted on multiple felony counts for the sexual assault of two minor children, including Annie G.

Annie G., through her guardian ad litem, sued Vincent, Iceland, Sparks, and the USFSA for various negligent and intentional torts for injuries resulting from Vincent's abuse and amended her complaint to add defendants Glacial Garden, Skating Edge, and the PSA.

Her second amended complaint alleged causes of action against Glacial Garden for negligence, negligent and intentional misrepresentation, negligent and intentional infliction of emotional

5

distress, negligent hiring and retention, negligent training and supervision, and failure to warn.

The trial court sustained Glacial Garden's demurrer to the second amended complaint without leave to amend as to her causes of action for negligent and intentional misrepresentation, and granted leave to amend the others. Annie G. filed a third amended complaint, to which Glacial Garden demurred, and the trial court sustained without leave to amend.[5]

The trial court concluded that Glacial Garden did not owe Annie G. a legal duty because she was never at the skating arena and no alleged conduct occurred towards her while Vincent was employed there, thus, there was no special relationship between Glacial Garden and Annie G. It found that Annie G. could not allege causation based on Glacial Garden's failure to report because, even after Vincent was reported to the authorities, Vincent remained her coach and the abuse continued. Judgment was entered in favor of Glacial Garden. Annie G. appealed.

Annie G. filed two motions to take evidence on appeal in support of her misrepresentation causes of action. That evidence consisted of Sparks's deposition taken after the trial court sustained the demurrer to the third amended complaint and an April 2019 grievance that Sparks filed with the USFSA. After the perfection of the appeal, Sparks testified at her deposition that Palmore had misled her as to Vincent's suitability as a coach and withheld vital information which would have caused Iceland not to employ him. Sparks testified that in 2009, when Vincent was seeking to be put

_____

[5]Annie G.'s third amended complaint alleged negligence, negligent infliction of emotional distress, negligent hiring and retention, and negligent training and supervision against Glacial Garden based on failing to report Vincent's conduct.

on staff at Iceland, she called Glacial Garden and asked Palmore if there was any reason she should not hire Vincent. Palmore responded, "No, everything's fine." The 2019 grievance with the USFSA contains similar allegations of the conversation between Sparks and Palmore. We deferred ruling on the motions, finding them more suitable for resolution here.[6]

## DISCUSSION

Annie G. challenges the trial court's finding that Glacial Garden did not owe her a duty to report Vincent's misconduct because they did not have a special relationship and thus no affirmative duty to protect Annie G. She also asserts that she can amend her complaint to allege Glacial Garden misrepresented Vincent's fitness as a coach. Because we agree that Annie G. has alleged sufficient facts on appeal to show she can state causes of action for negligent and intentional misrepresentation against Skating Arena she must be given leave to amend those causes of action.

I.     Standard of Review

We independently review the sustaining of a demurrer and whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the

---

[6] Annie G. filed two appeals. The first appeal was taken from the judgments entered after orders sustaining the demurrers filed by the USFSA and the PSA. The second appeal was taken from the judgments in favor of Glacial Garden. While her appeals were pending, Annie G. settled with Iceland, Sparks, the USFSA, and the PSA. We subsequently dismissed the appeal against the USFSA and the PSA.

properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  We construe the pleading in a reasonable manner and read the allegations in context.  (*Ibid.*)  We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment.  (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1082.)  The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action.  (*Ibid.*)  The plaintiff can make that showing for the first time on appeal.  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

II.  Annie G.'s negligence causes of action fail because Glacial Garden did not owe her a duty of care

To state a cause of action for negligence, a plaintiff must plead duty, breach, causation, and damages.  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  The existence of a duty of care is a question of law.  (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465.)  "Where, as here, a 'complaint alleges injuries resulting from the criminal acts of third persons . . . "the common law, reluctant to impose liability for nonfeasance, generally does not impose a duty upon a defendant to control the conduct of another [citations], or to warn of such conduct [citations], unless the defendant stands in some special relationship either to the person whose conduct needs to be controlled, or to the

8

foreseeable victim of such conduct." ' " (*Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564, italics omitted.) A defendant may also be held liable for the criminal acts of a third party under the negligent undertaking doctrine. (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76 (*Barenborg*).) "Under this doctrine, 'a person who has no affirmative duty to act but voluntarily acts to protect another has a duty to exercise due care if certain conditions are satisfied.' " (*Ibid*.) Neither exception applies here.

### A. *Glacial Garden did not have a special relationship with Vincent or Annie G.*

Annie G. contends that Glacial Garden had a special relationship with her and Vincent for two reasons. First, Glacial Garden's membership with the USFSA and PSA and its adoption of their reporting standards created a special relationship. Second, Glacial Garden had unique knowledge of Vincent's predatory behavior that posed a risk to his other skating students at other rinks. We disagree.

First, a defendant may owe a duty to protect the plaintiff from third party conduct if the defendant has a special relationship with either the plaintiff or the third party. (*Regents*, *supra*, 4 Cal.5th at pp. 619–620.) Special relationships arise when the plaintiff is dependent on the defendant for protection and the defendant has superior control over the means of protection. (*Id.* at pp. 620–621.) "Similarly, a duty to warn or protect may be found if the defendant has a special relationship with the potential victim that gives the victim a right to expect protection." (*Id.* at p. 619.) " ' "The key in each [special relationship] is that the defendant's relationship with . . . the tortfeasor . . . places the defendant in the best position to protect against the risk of harm." ' [Citations.] Thus, the

9

defendant's ability to control the person who caused the harm must be such that 'if exercised, [it] would meaningfully reduce the risk of the harm that actually occurred.'" (*Barenborg*, *supra*, 33 Cal.App.5th at p. 78.)

In *Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at page 620, our Supreme Court considered those features common to a special relationship. "Generally, the relationship has an aspect of dependency in which one party relies to some degree on the other for protection." (*Ibid.*) " '[A] typical setting for the recognition of a special relationship is where 'the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare.' '" (*Id.* at p. 621.) "Special relationships also have defined boundaries. They create a duty of care owed to a limited community, not the public at large." (*Ibid.*) Although these relationships often confer benefits to both participants, "many special relationships especially benefit the party charged with a duty of care," for example, between a retail store and its customers or a hotel and its guests. (*Ibid.*)

Here, Annie G. was never a student at Skating Arena and only became Vincent's student after he had been coaching another student at Iceland for several months. Annie G. could not have relied on Glacial Garden to protect her from harm and there was certainly no benefit, financial or otherwise, conferred on Glacial Garden when Vincent became Annie G.'s coach at a different skating rink. The allegations make clear that, at the time, Iceland and Sparks, not Glacial Garden, were in the best position to protect Annie G. from Vincent. Sparks observed Vincent's pattern of isolating his students before hiring him as a coach and before she recommended him to Annie G. As such, the relationship between

10

Annie G. and Glacial Garden was not a special relationship that would give rise to a duty of care.

Second, that Annie G. was a stranger to Glacial Garden notwithstanding, she asserts that a special relationship arose between her and Glacial Garden by virtue of Glacial Garden's unique knowledge of Vincent's predatory behavior. However, the allegations indicate that Sparks observed behavior similar to what Vincent exhibited at Glacial Garden while he coached at Iceland. For example, just as Vincent had been caught in a locked room with a student at Skating Arena, an Iceland coach found Vincent alone in the "coaches only" room with Annie G. Further, Annie G. alleged that Sparks knew that Vincent was violating his minor students' boundaries, for instance, she was aware that another skating student who was also one of Vincent's victims, was spending nights in Vincent's home multiple days per week. Thus, the complaint does not allege facts showing that Glacial Garden had unique knowledge of Vincent's predatory behavior to create a special relationship between the parties.

Glacial Garden's memberships with USFSA and PSA also did not create a special relationship between the rink and Annie G. As we stated above, special relationships do not create a duty to the public at large, but rather to specific individuals. Annie G.'s position would essentially make every skating rink that is a member of USFSA and PSA liable for the acts of a third party at every other skating rink where that third party had coached. This contention goes too far and is not supported by the authority cited by Annie G.

Annie G cites *Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118 (*Doe*). In *Doe*, a minor was sexually abused by her former soccer coach. She sued the relevant national

11

youth soccer association, that association's highest administrative body in northern California, and the local league that employed her coach. (*Id.* at pp. 1122–1123.) The plaintiff alleged that the defendants breached their duty to protect her by failing to conduct criminal background checks and by failing to warn or educate her about the risk of sexual assault. (*Id.* at p. 1123.) The trial court sustained the defendants' demurrers, but the Sixth Appellate District reversed. (*Id.* at p. 1122.) The court found that, "defendants, through the coaches, acted as 'quasi-parents' by assuming responsibility for the safety of the players whose parents were not present." (*Id.* at p. 1130.) The national organization, in turn, required the local league to comply with its policies and rules for hiring coaches. (*Id.* at p. 1131.) Since the national organization established the standards under which coaches were hired, it also had custody and supervision of children involved in its programs. (*Ibid.*)

Annie G. also cites *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377. In *Juarez*, a former boy scout was molested by the scoutmaster of his troop during officially sanctioned scouting events, such as overnight campouts. The boy scout sued Boy Scouts of America, the local chapter of that organization, and the church where the scout meetings took place. The First Appellate District affirmed the trial court's order granting summary judgment on all of plaintiff's causes of action, save one— his cause of action for negligence for the Boy Scouts of America and the local chapter's failure to take reasonable protective measures. (*Id.* at pp. 384–385.) The complaint alleged the organizations had an independent duty to protect and educate young men who participate in their programs. Plaintiff's theory was that, if the adult leaders in his troop had received training on how to prevent

12

and detect sexual abuse, and if he had been warned and educated about how to handle such a situation, the sexual molestations would have been prevented.  (*Id.* at p. 397.)

In both *Doe* and *Juarez*, the duty ran from the broader organization, down through the hierarchy, and to the individual victim because the organizations established mandatory rules and policies that governed the local youth organizations who were in the best position to protect the vulnerable minors under their supervision.  (*Doe, supra,* 8 Cal.App.5th at p. 1131; *Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at p. 411.)  In other words, the national organizations could be held liable because they exercised control over how the minors were supervised and protected.  Here, Annie G.'s complaint does not and cannot allege that Glacial Garden had any control over Vincent's conduct at Iceland where he coached Annie G.  The USFSA and PSA, not Glacial Garden, set the policies for credentialing coaches and the procedures for reporting misconduct.  We decline to find a duty that would run from rink to rink due to their membership in the USFSA and PSA.

> B. *Glacial Garden did not voluntarily assume a duty to report Vincent's misconduct*

Like her contention above that Glacial Garden's membership in USFSA and PSA created a special relationship, we also reject Annie G.'s argument that Glacial Garden's adoption of USFSA and PSA's reporting obligations constituted a voluntary undertaking to protect Annie G.

The negligent undertaking doctrine encompasses both undertakings to render protective services to the plaintiff (Rest.2d Torts, § 323), and undertakings to render services to a third party to protect the plaintiff (Rest.2d Torts, § 324A).  For liability to

13

attach, the defendant " 'must *specifically* have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative duty to perform that undertaking carefully.' " (*Doe, supra*, 8 Cal.App.5th at p. 1139, fn. 7.)  The plaintiff must show:  "(1) the defendant undertook to render services to another; (2) the services were of the kind the defendant should have recognized as necessary for the protection of third persons; and (3) either (a) the defendant's failure to exercise reasonable care increased the risk of harm beyond what existed without the undertaking, (b) the undertaking was to perform a duty owed by the other to the third persons, or (c) a harm was suffered because the other or third persons relied on the undertaking." (*Barenborg, supra*, 33 Cal.App.5th at p. 84.)

Annie G. concedes that Glacial Garden was not a custodian in the sense that it provided childcare or had legal control over its students.  Rather, Annie G. contends that Glacial Garden, through its adoption of USFSA and PSA's reporting standards, had a duty to report Vincent's conduct that ran to Annie G. and other members of those associations.

Adoption of an organization's standards and rules does not amount to a specific undertaking for the negligent undertaking doctrine to apply.  (See, e.g., *Barenborg, supra*, 33 Cal.App.5th at pp. 83–84; *University of Southern California v. Superior Court* (2018) 30 Cal.App.5th 429; *Doe, supra*, 8 Cal.App.5th at p. 1139, fn. 7.)  In *University of Southern California*, at page 436, for example, a student sued her university for negligence after she was injured at an off-campus fraternity party when she was inebriated. The university had a policy of requiring fraternities to obtain prior authorization to serve alcohol at social events.  (*Id.* at 437.)  The

university also had public safety officers patrolling the areas around the campus, including the area where the fraternity house was located. (*Id.* at pp. 436–437.) The student asserted that the university had failed to protect her from an unreasonable risk of harm and breached that duty by failing to either prevent or shut down the party. (*Id.* at p. 436.) The court concluded that the university's alcohol policy for social events and off-campus security patrol did not amount to a specific undertaking to protect the student from third party conduct at an off-campus party. A "college has little control over such noncurricular, off-campus activities, and it would be unrealistic for students and their guests to rely on the college for protection in those settings." (*Id.* at p. 449.)

The connection here is even more tenuous than between the student and university in *University of Southern California v. Superior Court*. Glacial Garden did not establish the policies for hiring and supervising coaches at Iceland. Indeed, the only connections between Iceland and Glacial Garden was their membership in the USFSA and PSA and their employment of Vincent. Glacial Garden's membership in those associations did not amount to a voluntary undertaking to protect every student at every other member rink, including Annie G. The negligent undertaking doctrine is therefore inapplicable.

C.   *Glacial Garden did not owe a duty to Annie G. as a mandated reporter.*

Annie G. argues that Glacial Garden owed her a duty to report Vincent's conduct that occurred while he was still a coach at Skating Arena. Annie G. theorizes that, because Glacial Garden failed to report Vincent's conduct towards Doe, he was able to continue to abuse minor students, including her, for four more years after he left Skating Arena. While the parties dispute whether

15

Vincent's conduct at Glacial Garden constituted reportable abuse or neglect, we need not decide that issue here because Glacial Garden's duty to report did not run to Annie G.

In *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, the California Supreme Court found that a mandatory reporter's duty to report ran to those children in the custodial care of the person charged with reporting the abuse, but not to all children "who may at some future time be abused by the same offender." (*Id.* at p. 1087.) In the plaintiff's view, if a childcare custodian fails to report suspected child abuse affecting one child in its care or custody, it could be held liable, "perhaps years later, to any other children abused by the same person, whether or not those children were within its custodial protection." (*Ibid.*) "Neither legislative intent nor public policy would support such a broad extension of liability." (*Ibid.*)

Similarly, here, we decline to impose liability on Glacial Garden for failing to report Vincent's misconduct towards his student that he brought from Glacial Garden to Iceland such that it can also be held liable for Annie G.'s injuries.[7]

---

[7] Because we find that Glacial Garden did not owe Annie G. a duty of care, there is no liability for the negligent hiring, retention, and supervision of Vincent by Glacial Garden (see *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 877), or for negligent infliction of emotional distress (see *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 876).

III.    Annie G. cannot state a cause of action for intentional infliction of emotional distress.

Annie G.'s second amended complaint alleges a cause of action for intentional infliction of emotional distress. Annie G.'s cause of action fails, however, because Glacial Garden's conduct was not directed towards her.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) The conduct must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware. (*Catsouras v. Department of California Highway Patrol, supra,* 181 Cal.App.4th at pp. 874–875.) Conduct not aimed or directed at the injured plaintiff will not support a cause of action for the intentional infliction of emotional distress since it was not done with the intention of causing emotional distress.

Here, Annie G. was a stranger to Glacial Garden. She never skated at Skating Arena and did not meet Vincent until he was a coach at Iceland. Therefore, Glacial Garden's alleged misconduct could not have been directed towards her.

IV.    Annie G. can state a cause of action for misrepresentation.

Annie G. asserts that she can amend her complaint, for a fourth time, to plead negligent and intentional misrepresentation causes of action against Glacial Garden based on Sparks's

postjudgment deposition testimony that Palmore misled her regarding Vincent's fitness as a coach. Here, we agree as to Skating Arena, but not as to White.[8]

Again, we find *Randi W.* instructive. There, the California Supreme Court decided under what circumstances courts may impose tort liability on employers who fail to use reasonable care in recommending former employees for employment without disclosing material information bearing on their fitness. (*Randi W. v. Muroc Joint Unified School Dist.*, *supra*, 14 Cal.4th at p. 1070.) The defendant school district officers wrote letters of recommendation on behalf of an administrative employee they formerly employed. (*Ibid.*) However, despite defendants' knowledge, the unreserved recommendations failed to disclose prior charges and complaints regarding the administrator's sexual misconduct. (*Ibid.*) Defendants' letters allegedly induced another school district to hire the administrator, who later sexually assaulted the plaintiff, a student in that district. (*Ibid.*) The plaintiff sued her own school district and other school districts who had written letters recommending the administrator for employment but failed to

---

[8] Annie G.'s motions to take evidence on appeal and requests for judicial notice, filed on September 19, 2019 and October 18, 2019, are denied. We grant such requests only under exceptional circumstances that justify deviating from the general rule that appellate review is limited to the record before the lower court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) No such exceptional circumstances are present here. Nevertheless, on an appeal from a judgment after a demurrer has been sustained without leave to amend, the plaintiff can show, for the first time on appeal, that the complaint can be amended to state a cause of action. (*Careau & Co. v. Security Pacific Business Credit, Inc.*, *supra*, 222 Cal.App.3d 1371, 1386.)

18

disclose his history of sexual misconduct. (*Id.* at pp. 1071–1072.) While the Supreme Court found that plaintiff could not state a claim for general negligence, it nonetheless concluded that the complaint could allege causes of action for negligent misrepresentation and fraud. (*Id.* at p. 1070.) Specifically, that defendants' letters of recommendation, containing unreserved and unconditional praise for the former employee despite knowledge to the contrary, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation. (*Ibid.*) The court noted that, ordinarily, a recommending employer is not liable to a third person for failing to disclose negative information regarding a former employee, however, when the recommendation letter amounts to an affirmative misrepresentation that presents a foreseeable and substantial risk of physical harm to a third person, liability will attach. (*Ibid.*)

Similarly, here, while the chain of causation between Palmore's statement and Annie G.'s injuries is attenuated, we find it can be alleged that Skating Arena had a duty under *Rowland v. Christian* (1968) 69 Cal.2d 108 to not misrepresent Vincent's fitness as a coach. *Rowland* enumerated certain considerations that courts evaluate when determining whether a departure from the general rule of no liability is appropriate. (*Id.* at p. 113.) These include the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (*Ibid.*)

19

The specific harm alleged here was a reasonably foreseeable consequence of Palmore's unqualified endorsement of Vincent's fitness as a coach. When Palmore told Sparks that everything with Vincent was fine, Palmore knew it to be otherwise, and had in fact fired Vincent for his inappropriate behavior with his minor students. Skating Arena could also reasonably foresee that, had it disclosed Vincent's conduct with his minor students, Iceland would not have hired him. It was also reasonably foreseeable that Vincent might engage in those same boundary violating behaviors at Iceland, which could eventually result in a more serious assault, like what occurred here. We acknowledge these attenuating circumstances, however, for purposes of demurrer, we assume that Annie G.'s injuries were caused by Skating Arena's conduct.

The other *Rowland* factors also weigh in favor of finding a duty here as well. Certainly, misrepresenting material facts that are necessary to avoid or minimize the risk of child molestation or abuse is morally blameworthy. Just as in *Randi W.*, the company had alternative courses of conduct to avoid potential liability, mainly, it could have made a full disclosure of why it terminated Vincent or simply refused to comment on Vincent's fitness for employment. (See *Randi W. v. Muroc Joint Unified School Dist.*, *supra*, 14 Cal.4th at p. 1078.) The "absence of a duty to speak does not entitle one to speak falsely." (*Garcia v. Superior Court* (1990) 50 Cal.3d 728, 736.) Moreover, it is undisputed that public policy prioritizes protecting children from sexual abuse. (*Randi W.*, at pp. 1078–1079.)

As such, while we find that there was no general duty of care owed to Annie G. by Glacial Garden, once Sparks inquired about Vincent's fitness, Skating Arena had a duty to not misrepresent those facts because it was reasonably foreseeable that Vincent

20

would engage in the same behavior at Iceland and that there was a risk for serious physical harm to his minor skating students, including Annie G.[9]

V.    Annie G. should be given leave to amend her negligent and intentional misrepresentation causes of action.

Because of the unique circumstances of this case, mainly, that Annie G. acquired new evidence that would assist her in amending her complaint after the trial court dismissed her claims without leave to amend, there was no exercise of discretion by the trial court as to the new evidence. At the time of dismissal, the trial court was well within its discretion to dismiss the complaint and deny leave to amend. The trial court already granted Annie G. leave to amend four times and, at the hearing on demurrer, Annie G.'s counsel failed to offer any additional facts to show a reasonable possibility that amendment was possible.

However, Annie G. has met her burden on appeal to show that she can properly amend her complaint to state a cause of action for negligent and intentional misrepresentation. Accordingly, without finding an abuse of discretion, we conclude that the trial court must allow Annie G. to amend her causes of action for negligent and intentional misrepresentation.

---

[9] We also conclude that White was properly dismissed even considering Annie G.'s new allegations. At oral argument, Annie G.'s counsel represented that, other than White's knowledge of Glacial Garden's duty to report Vincent, he could not amend the complaint with specific allegations of White's tortious conduct with respect to the misrepresentation by Palmore. Annie G.'s counsel also represented that he could not amend the complaint to assert an alter ego theory of liability against White. As such, the trial court's dismissal of White is affirmed.

21

## DISPOSITION

The judgment is reversed.  The trial court is directed to (1)  vacate its order sustaining Glacial Garden Skating Arenas, LLC and Ron White's demurrer without leave to amend and (2) enter a new order allowing Annie G. to amend her causes of action for negligent and intentional misrepresentation against Glacial Garden Skating Arenas, LLC and sustaining the demurrer without leave to amend as to all other causes of action against Glacial Garden Skating Arenas, LLC and Ron White.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


DHANIDINA, J.

We concur:


EDMON, P. J.


LAVIN, J.

22