Filed 7/22/22  Steagall v. The Alpha Epsilon Pi Foundation CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JUSTIN STEAGALL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE ALPHA EPSILON PI FOUNDATION, INC., et al.,<br><br>    Defendants and Respondents. | B308076<br><br>(Los Angeles County Super. Ct. No. BC655418) |

APPEAL from judgments of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge.  Affirmed.

Armen M. Tashjian for Plaintiff and Appellant.

Cokinos│Young, Michael C. Osbourne and Jaskiran K. Samra for Defendants and Respondents.

While at a fraternity at University of California Los Angeles (UCLA), 18-year-old Justin Steagall drank beer and was assaulted.  Steagall sued the following fraternity-related entities for negligence and premises liability:  The Alpha Epsilon Pi Foundation, Inc.; Alpha Epsilon Pi Fraternity, Inc.; Xi Deuteron Chapter of Alpha Epsilon Pi Fraternity; and Zeta Beta Tau – Phi Sigma Delta Corporation of Los Angeles (collectively, the fraternity defendants).  The fraternity defendants moved for summary judgment on the grounds that the social host immunity in Civil Code section 1714, subdivision (c), applied to them and that they owed no duty of care to Steagall.  The trial court granted summary judgment in their favor, and Steagall now appeals.  We affirm the judgments.

## BACKGROUND

I.     Steagall attends a party at the Alpha Epsilon Fraternity

On March 28, 2015,[1] Steagall was 18 years old and a high school senior.  That night, he and friends were walking around UCLA's fraternity row, looking for a party.  On hearing music coming from the Alpha Epsilon fraternity house, Steagall and his friends asked if they could come in, and Gideon Wolder, who was hosting his birthday party, told them they could.  Wolder was a fraternity member and on the fraternity's judicial board.  Alcohol was served at the party, and Steagall played beer-pong, consuming ten cups of beer and some vodka.  At some point, a fight broke out.  When Steagall stood to see what was happening, someone sucker punched him in the head, causing him to lose consciousness.  The person continued to beat Steagall as he lay

[1] School was not in session, presumably because it was Spring Break.

2

on the floor.[2]  The next thing Steagall recalled was waking in the hospital.

In 2019, Steagall sued the fraternity-related defendants, alleging, as relevant here, causes of action for negligence and premises liability.[3]  He alleged that the fraternity defendants failed to maintain the premises in a safe condition by knowingly serving an underaged Steagall alcohol, by not having a security guard on the premises, by not checking partygoers' age and identification, and by creating a nightclub-type of atmosphere. He further alleged that the fraternity defendants owed him a duty to prevent fraternity members from serving him alcohol and from being assaulted.

Steagall named four entities:  (1)  Zeta Beta Tau – Phi Sigma Delta Corporation of Los Angeles (the House Corporation), (2)  Xi Deuteron Chapter of Alpha Epsilon Pi Fraternity (the UCLA Chapter), (3)  Alpha Epsilon Pi Fraternity, Inc. (the Fraternity), and (4)  Alpha Epsilon Pi Foundation, Inc. (the Foundation).

The House Corporation was a nonprofit corporation incorporated in California.  It owned the premises where Steagall was injured, leased it to members of the UCLA Chapter, and allowed the UCLA Chapter to use the premises as a fraternity chapter house.  The House Corporation and the UCLA Chapter did not share officers or bank accounts, and the UCLA Chapter

_____

[2] Mikey Leiderman, who was not a member of the fraternity, was the alleged assailant.  He is not a party to this lawsuit.

[3] Steagall alleged but did not pursue a cause of action for intentional infliction of emotional distress against the fraternity defendants.  He also alleged a cause of action for assault and battery against his then-unknown assailant.

3

did not represent the House Corporation in dealings with third persons. The House Corporation did not control or supervise the UCLA Chapter's or its undergraduate members' day-to-day activities and did not participate in planning Wolder's birthday party.

The UCLA Chapter was permitted to use the premises as a fraternity chapter house. Members of the UCLA Chapter leased their individual rooms from the House Corporation.

The Fraternity was a nonprofit corporation, incorporated in New York, that operated a men's college fraternal organization. It provided education, resources, and training to future leaders of the world's Jewish communities. Currently, the Fraternity recognizes over 170 local and prospective chapters in the United States and other countries. A Supreme Council and Supreme Board of Governors governed the Fraternity and conducted its business, including granting and suspending chapter charters. The Fraternity's Supreme Constitution and Bylaws (the Bylaws) governed each of its local chapters, including the UCLA Chapter, but each chapter was self-governing and financially self-sufficient, elected its own officers, established its own bylaws, determined its method of operation, and governed its affairs consistent with and subject to the Bylaws. Local chapters were permitted to use the Fraternity's name and insignia, and the Fraternity provided chapters with educational and operational resources to be used at the chapters' discretion. The Fraternity did not control or supervise the day-to-day activities of its chapters but could discipline them for violating the Bylaws by revoking or suspending the charter. The Fraternity and House Corporation did not share officers or bank accounts, and the Fraternity did not represent the House Corporation in dealings

4

with third persons. The Bylaws provided that no chapter or its members had authority to act as the Fraternity's agent unless such representation was in writing. The Fraternity was not involved in Wolder's birthday party and did not own, lease or possess the premises where the assault occurred.

The Foundation was a nonprofit organization incorporated in New York that promoted the Fraternity's values through leadership development, partnerships with Jewish organizations, and provided scholarships and support to the Fraternity. However, the Foundation did not issue charters to individual chapters; did not share office space, a bank account or employees, officers or directors with the UCLA Chapter; did not manage, supervise or oversee the day-to-day activities of the UCLA Chapter; did not represent the UCLA Chapter or the House Corporation in dealings with third parties; did not issue rules or policies to the UCLA Chapter; had no disciplinary power over the UCLA Chapter; and had never consented to the UCLA Chapter acting on its behalf. The Foundation did not own, operate, lease, rent, manage or possess the premises where Steagall was assaulted. Also, the Foundation did not share officers or bank accounts with the entity that owned the premises, the House Corporation, and the House Corporation did not represent the Foundation in dealings with third parties. The Foundation did not participate in planning Wolder's party or know it would take place.

II.     The motions for summary judgment

The four fraternity defendants filed separate motions for summary judgment based on similar grounds. First, to the extent the causes of action against them were based on the provision of alcohol to Steagall, they were immune under Civil

5

Code section 1714, subdivision (c), the social host immunity. Second, they were not liable for negligence because they did not owe Steagall a duty of care. Third, they were not vicariously liable for the actions of the UCLA Chapter, its members, or each other. The Fraternity additionally argued it had no special relationship with the UCLA Chapter.

In his oppositions, Steagall first argued that the fraternity defendants were not immune for providing alcohol to him because Civil Code section 1714, subdivision (d), excepts claims against parents, guardians or adults who knowingly furnish alcoholic beverages at their residence to an underaged person. Second, Steagall cited principles of vicarious liability, agency, and respondeat superior to argue that each fraternity defendant was liable for the conduct of the House Corporation and the UCLA Chapter. Third, Steagall argued that the fraternity defendants were liable for the UCLA Chapter's conduct because they ratified its conduct after the fact. As to the House Corporation, Steagall argued it was not an absentee landlord but ran a boarding house that doubled as a fraternity event center.[4]

III.    The trial court grants summary judgment.

The motions for summary judgment were originally scheduled to be heard in December 2019. At that time, the trial

---

[4] Steagall also argued that defendants were responsible as joint venturers but does not raise that argument on appeal. Also, Steagall asked the trial court for judicial notice of a publication, Alcohol-Related Student Deaths, posted on the internet by CompelledToAct.com. The publication identified alcohol-related deaths of college students nationwide from Spring 2004 to Spring 2016. The trial court denied the request for judicial notice, and no party raises that issue on appeal.

6

court issued a written tentative ruling granting the motions, stating that the fraternity defendants had met their initial burden of showing that Steagall could not establish duty or breach, and Steagall had not "overcome the burden shifting with admissible evidence." But, on Steagall's request, the trial court continued the hearing to allow the parties to supplementally brief Civil Code section 1714, subdivision (d).

After receiving supplemental briefing and hearing oral argument, the trial court granted the motions. The trial court found that Civil Code section 1714, subdivision (d), did not apply to entities like the fraternity defendants because the subdivision referred to an "adult" and not to a "person" and because an entity cannot have a residence.

The trial court also rejected the theory that the fraternity defendants were liable via a respondeat superior theory through nonparty Wolder, stating that the mere fact that Wolder was a member of the UCLA Chapter did not show he had actual or apparent authority to act on its behalf. Further, there was no evidence Wolder was acting within the scope of his authority as a member of the UCLA Chapter's judicial board when he gave alcohol to Steagall.[5]

## DISCUSSION

### I. Summary judgment standard of review

Summary judgment provides courts with a mechanism to cut through the parties' pleadings to determine whether, despite

---

[5] At oral argument, the trial court noted that there was a problem with causation because there was no link to Steagall being served alcohol and the assault. Because defendants had not moved on the grounds of causation, the trial court decided not to rule on that issue.

7

their allegations, trial is necessary to resolve the dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party bears the burden of persuasion that there is no triable issue of material fact and it is entitled to judgment as a matter of law. (*Id.* at p. 850.) A defendant can meet this burden by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to it. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the cause of action. (*Ibid.*) The plaintiff may not rely on its allegations in its pleadings to show that such a triable issue exists but must instead set forth specific facts showing a triable issue of material fact. (*Ibid.*) A triable issue of material fact exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

We review an order granting summary judgment de novo, considering all the evidence in the papers except that to which objections have been made and sustained. (*Sakai v. Massco Investments, LLC* (2018) 20 Cal.App.5th 1178, 1183.) We view the evidence in a light favorable to the plaintiff as the losing party, liberally construe the plaintiff's evidentiary submission while strictly scrutinizing the defendants' showing, and we resolve any evidentiary doubts or ambiguities in the plaintiff's favor. (*Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 287–288.)

II.     The social host immunity exception

The causes of action for negligence and for premises liability were largely based on the allegation that the fraternity

8

defendants served an underaged Steagall alcohol.  The fraternity defendants argued they were immune from liability on those causes of action under the social host immunity in Civil Code section 1714, subdivision (c).  The trial court agreed.  Steagall now contends that the trial court erred as a matter of law because the exception to the immunity in subdivision (d) of Civil Code section 1714 applied to the fraternity defendants.  We disagree.

Decades ago, our Legislature changed the nature of tort liability for those who provide alcoholic beverages in social settings by granting such providers sweeping civil immunity. (*Allen v. Liberman* (2014) 227 Cal.App.4th 46, 53 (*Allen*).)  The Legislature thus added section 1714, subdivision (c), to the Civil Code, which provides that "no social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages."  (See also Bus. & Prof. Code, § 25602, subd. (b) [providing immunity from civil liability for selling, serving or furnishing alcoholic beverages to obviously intoxicated person].)  This social host immunity applies to the failure to supervise people who drink alcohol at social events. (*Allen*, at p. 54.)

There is an exception to the social host immunity.  A "parent, guardian, or another adult" who "knowingly furnishes alcoholic beverages at his or her residence to a person whom he or she knows, or should have known, to be under 21 years of age," may be held legally accountable to a person suffering damages resulting from consuming those beverages.  (Civ. Code, § 1714, subd. (d)(1).)

Steagall argues that this exception applies to the fraternity defendants.  His argument hinges on the meaning of "parent, guardian, or another adult."  (Civ. Code., § 1714, subd. (d)(1).)  According to him, corporate entities like the fraternity defendants are "another adult."  According to the fraternity defendants and the trial court, corporate entities are *not* "another adult"; rather "another adult" must be a natural person.  The matter for us therefore is one of statutory interpretation.

In cases involving statutory interpretation, our fundamental task is to determine the Legislature's intent, so as to effectuate the law's purpose.  (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105; *1500 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court* (2018) 28 Cal.App.5th 1146, 1151.)  We begin by examining the statute's words, giving them their usual and ordinary meaning, because the words generally are the most reliable indicator of legislative intent.  (*1500 Laurel*, at p. 1151.)  If unambiguous, the plain meaning of the statutory language controls, and we need go no further.  (*Ibid.*)  Ultimately, we choose the construction comporting most closely with the legislators' apparent intent, with a view to promoting the statute's general purpose, rather than defeating it.  (*Ibid.*)

Here, the language at issue is "parent, guardian or another adult."  (Civ. Code., § 1714, subd. (d)(1).)  "Adult" generally refers to a natural person over a certain age, usually 18 years.  (See, e.g., Fam. Code, §§ 6500 [minor is individual under 18], 6501 [adult is individual 18 or older]; Ed. Code, § 52610 [adult for purposes of crediting attendance from state school fund is a person 18 years or older]; Prob. Code, § 3901, subd. (a) [adult for purposes of Uniform Transfers to Minors Act is person 18 years or older].)  Corporate entities, however, have no age and are not

10

characterized as adults or children. Further, the word "another" in front of adult shows that the adult must be like or similar to a parent or guardian of a minor. Given that a natural person is a parent or guardian of a minor, it follows that "another adult" must also be a natural person, i.e., someone who is responsible for a minor.

Civil Code section 1714, subdivision (d)(1), also refers to knowingly furnishing alcoholic beverages at "his or her *residence*." (Italics added.) In this context, residence clearly refers to a person's home, where natural people live. Corporate entities do not have homes or residences as such. They may own property and have places of incorporation or reside in a state, but that is clearly not what the statute is referring to when it uses the term "residence" as a place where alcohol can be served. On its face, the subdivision is therefore limited to natural persons and excludes corporate entities.

Limiting Civil Code section 1714, subdivision (d), in this manner makes sense in the overall context of the statute's general purpose. As we have said, the Legislature, via Civil Code section 1714, subdivision (c), in 1978, limited tort liability for social hosts who supply alcohol to a person. (*Allen*, *supra*, 227 Cal.App.4th at p. 53.) Thereafter and in response to alcohol-related deaths of minors and others under the legal drinking age, the Legislature, in 2010, created the exception in Civil Code section 1714, subdivision (d). Given that children and people under the legal drinking age were the target of the protections afforded by that exception, it makes sense that parents and guardians and like adults who socially host children at parties, sleepovers, and other get togethers would be the subjects of the

11

exception.  Stated otherwise, the exception is aimed at preventing adults from giving minors alcohol at social events.

And although we have no need to turn to legislative history where, as here, the face of the statute is unambiguous (see, e.g., *People v. Borynack* (2015) 238 Cal.App.4th 958, 962 [if statute susceptible of more than one reasonable interpretation, we may look to legislative history to aid interpretation]), legislative history supports our conclusion.  As the court in *Allen, supra*, 227 Cal.App.4th at pages 50, 55 and footnote 3, said, Civil Code section 1714, subdivision (d), was enacted partly in response to the tragic death of 16-year-old Shelby Allen after she drank 16 shots of vodka in one hour during a sleepover at a friend's house. "According to an Assembly bill analysis of Assembly Bill No. 2486 (2009–2010 Reg. Sess.) as amended on June 29, 2010, it appears the statute was amended as the result of Shelby's death.  The bill analysis provides:  'In support of the narrow approach taken in the bill, the author underscores the measure is not about somehow imposing "automatic liability" *on any adult who may have inadvertently provided access to alcohol by a minor*.  The bill simply removes the absolute bar to any potential liability in any situations for *adult social hosts* who knowingly provide alcohol to minors.  Under the bill, the families of a minor injured or killed by alcohol will still need to prove in court all the elements of negligence—that *an adult social host, as narrowly defined below*, breached his or her responsibility to uphold the law, knowingly provided alcohol to the child, and injuries or death thereby resulted from this action.  [¶]  . . .' (Assem. Conc. Sen. Amends. to Assem. Bill No. 2486 (2009–2010 Reg. Sess.) as amended June 29, 2010, p. 2[ ].)  The bill analysis added:  '. . .  [¶]  Shelby's tragic death is just one example of the devastating consequences

that can follow underage drinking.  As a result, many groups . . . recommend our legal system should discourage *parents* from allowing underage drinking in the home, and they strongly support the establishment and enforcement of targeted social host laws like the one proffered in this measure to reduce access to alcohol by underage youth.' "  (Italics added.)  Legislative history therefore supports our conclusion that the exception in subdivision (d) is targeted at natural persons, in particular, parents, guardians and other adults who often have the care of or host children at social events.

To support his argument to the contrary that "adult" includes corporate entities, Steagall cites Business and Professions Code section 5219, which provides that a "person" includes a "natural person, firm, cooperative, partnership, association, limited liability company, and corporation."  As is evident, however, that section is part of the Business and Professions Code and, specifically, the Outdoor Advertising Act (OAA) (Bus. & Prof. Code, 5200 et seq.).  *For the purposes of the OAA*, a person includes corporate entities.  Steagall cites no authority—other than general principles concerning statutory interpretation—that the specific definition of a person applicable to the OAA has been imported into Civil Code section 1714, subdivision (d).  If that were the case, then why wouldn't it be imported into *all* of California's codes and acts?

We therefore find that the trial court did not err as a matter of law in finding that the exception to the social host immunity in Civil Code section 1714, subdivision (d), for adults who provide alcohol to a person under 21 years did not apply to the fraternity defendants.

III.  Negligence and premises liability causes of action and the House Corporation and the UCLA Chapter[6]

The negligence and premises liability causes of action were based on Wolder's provision of alcohol to the underaged Steagall, the third party's assault on Steagall, the failure to check guests' identification at the party, and the failure to have a security guard at the party. After setting forth applicable principles, we explain why the trial court properly found that no triable issue of material fact existed as to the House Corporation and the UCLA Chapter.

A. *General principles of negligence and premises liability*

A plaintiff suing for negligence must prove duty, breach of duty, causation, and damages. (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70 (*Barenborg*).) Although the general rule is that everyone has a duty to act with reasonable care under the circumstances (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619), there is no general duty to act to protect others from a third party's conduct (*Barenborg*, at p. 76). An exception exists where the defendant had a special relationship with the plaintiff or the

---

[6] Although Steagall alleged the causes of action against all fraternity defendants, he states in his reply brief on appeal that the premises liability cause of action applies only to the House Corporation "directly and to the others vicariously." Elsewhere in his briefs, he appears to raise liability for direct negligence and premises liability as to the House Corporation and the UCLA Chapter. We therefore address direct liability on these causes of action as to the House Corporation and the UCLA Chapter only.

14

third party.[7]  (*Ibid*.)  " 'The relationship between a possessor of land and an invitee is a special relationship giving rise to a duty of care.' " (*Hanouchian v. Steele* (2020) 51 Cal.App.5th 99, 107 (*Hanouchian*).)

Landowners generally owe a duty to maintain their property in a reasonably safe condition, and an exception to this general rule will be made when a public policy clearly supports it. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674, disapproved on another ground by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.)  Public policy generally precludes landlord liability for a dangerous condition coming into existence after possession of the premises has passed to a tenant in the absence of the landlord's actual knowledge of the dangerous condition.  (*Garcia v. Holt* (2015) 242 Cal.App.4th 600, 604.) Otherwise, *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 to 113 (*Rowland*), sets forth the factors to balance when determining whether an exception to the general rule of liability should be made: "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (See also *Hanouchian, supra,* 51 Cal.App.5th at p. 107.)  The two most important considerations are foreseeability

---

[7] Another exception is where the defendant voluntarily undertook to act to protect another (the negligent undertaking doctrine).  (*Barenborg, supra,* 33 Cal.App.5th 76.)

and the extent of the burden on the defendant, and in cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. (*Id.* at p. 108.)

To determine duty, a court should first identify what specific measures the plaintiff claims the defendant should have taken to prevent the harm. (*Hanouchian, supra,* 51 Cal.App.5th at p. 108.) Second, how financially and socially burdensome would those measures be on a landlord or possessor of property? (*Ibid.*) And third, what was the third party conduct that the plaintiff claims the proposed measures could have prevented and how foreseeable was this conduct? (*Ibid.*)

*Hanouchian* analyzed these three factors in a context similar to the one we face here. In that case, sorority members at a California university hosted an open party (a party with unrestricted access by nonmembers without invitation where alcohol is present) at their off-campus residence. (*Hanouchian, supra,* 51 Cal.App.5th at p. 104.) Two men attacked the plaintiff at the party. The plaintiff sued the sorority members for negligence based on their failure to follow the university's and the fraternal organizations' risk management protocols. (*Id.* at p. 103.) Those protocols required sororities to limit the type and amount of alcohol served, to provide security, to have an approved guest list, and to comply with risk management policies, which precluded open parties. (*Id.* at pp. 103–104, 109.) Further, the protocols were developed in response to prior incidents involving violence and unlimited alcohol. The plaintiff in *Hanouchian,* at page 109, claimed that the sorority members should have had a security guard, vetted attendees, and abided by the risk management policies. The trial court rejected those

16

claims and sustained the sorority members' demurrers without leave to amend.

On review, the Court of Appeal noted that a property owner may have a duty of care to take reasonable steps to protect persons on its property from physical harm caused by a third party's foreseeable criminal act. (*Hanouchian*, *supra*, 51 Cal.App.5th at p. 107.) That being said, providing security guards and vetting attendees are "highly burdensome measures that require a heightened degree of foreseeability." (*Id.* at p. 109; accord, *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 244–246 [bar owner had no duty to provide security guard to prevent assaults, despite evidence of a few prior altercations between patrons]; *Ann M. v. Pacific Plaza Shopping Center*, *supra*, 6 Cal.4th at p. 679 [hiring security guard rarely will be merely a minimal burden]; *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 540–541 [heightened degree of foreseeability of assault must be shown before homeowner who had open party can be required to limit or vet guest list].) The burden of hiring security guards is so extreme that the requisite degree of foreseeability to trigger that burden will rarely, if ever, be established in the absence of evidence of prior similar incidents. (*Melton*, at p. 539.)

Thus, in *Hanouchian*, allegations of past violence were insufficient to establish that the assault was highly foreseeable or to evidence *actual* knowledge sufficient to give rise to a duty to prevent third party criminal conduct. (*Hanouchian*, *supra*, 51 Cal.App.5th at pp. 111–113.) Rather, a defendant has no duty to take steps to prevent or respond to third party crime based on constructive knowledge or information that the defendant should have known. (*Id.* at p. 112.) Knowledge of prior incidents at fraternity parties establishes only " 'general knowledge of the

17

*possibility* of violent criminal conduct' " and does not suffice to make it highly foreseeable a criminal assault would occur at a specific party. (*Id.* at p. 113.) Accordingly, the Court of Appeal affirmed the judgment in the sorority members' favor.

B. *Steagall failed to raise a triable issue of material fact.*

Here, the House Corporation owned the premises, which it leased to individual members of the UCLA Chapter. The UCLA Chapter was further permitted to use the premises as a fraternity chapter house. As such, Steagall alleged that these defendants had a duty to provide a security guard at Wolder's party, to prevent underage drinking, and to vet guests. However, such measures are highly burdensome and will not be imposed on a landowner or possessor of property in the absence of a high degree of foreseeability. (See, e.g., *Hanouchian, supra,* 51 Cal.App.5th at p. 108.)

Steagall, however, failed to present any evidence that his assault was highly foreseeable to the House Corporation and the UCLA Chapter. He instead relied on general allegations in his complaint, the Bylaws and risk management policies, and common sense. A plaintiff may not, however, rely on his complaint's allegations but instead must show specific facts to defeat summary judgment. (Code Civ. Proc., § 437c, subd. (c).) And while the Bylaws and risk management policy address open parties and alcohol use, they are nonetheless insufficient to show there existed a high degree of foreseeability that a criminal assault would occur at Wolder's birthday party and thus to raise a triable issue of fact as to the issue of duty by the House Corporation. (See *Hanouchian, supra,* 51 Cal.App.5th at pp. 110–111 [fraternal organizations' guidelines and protocols did

18

not impose greater legal duty on sorority members than statutory or common law otherwise allowed].)

Finally, Steagall dismisses his obligation to produce evidence to create a triable issue of material fact that there was a high degree of foreseeability a criminal assault would occur at the premises by implying it is a matter of common sense. Steagall did not produce evidence of any past incidents of violence at the UCLA Chapter or of its and the House Corporation's actual knowledge of any such incidents. And while he does state that Wolder was a member of the UCLA Chapter's judicial board, which adjudicated issues such as fights between members and breaches of conduct, it is unclear what the link is between Wolder's status and foreseeability. There is no evidence, for example, about what Wolder might have learned as a member of the judicial board that might establish such a link.

Instead, Steagall offhandedly asserts that it doesn't "take a rocket scientist to figure out that uncontrolled consumption of alcohol and drugs, in a party where a bunch of young men and women are drinking, getting high and partying, bad things such as violent attacks, fights, rapes, etc., are foreseeable." We agree: this was not a matter of rocket science; it was a matter of evidence. While we are not cavalier about the sentiment underlying Steagall's remark—that drinking and criminal behavior can occur at fraternity parties—there is no recognized special relationship between fraternity members who have been told not to engage in certain behaviors and partygoers that would permit imposing a greater or more burdensome duty on fraternity members solely because of their membership and training. (*Hanouchian*, *supra*, 51 Cal.App.5th at p. 110.) Stated otherwise, what may be common sense is insufficient to establish the duty

19

Steagall seeks here to impose.  (See *Melton v. Boustred*, *supra*, 183 Cal.App.4th at p. 538 [foreseeability of criminal assault cannot be established by common sense notion that open invitation to party would result in injury].)

In the absence of *evidence* relevant to establish the high degree of foreseeability needed to impose a duty, summary judgment was properly granted.

## IV. Vicarious liability

Steagall posits an alternative theory why the fraternity defendants should be liable for negligence and premises liability: Wolder was their agent and, as such, vicariously liable through him.

### A. *General principles*

An agency is created when an agent represents another, called the principal, in dealings with third persons.  (Civ. Code, § 2295.)  "A corporation may be held vicariously liable as a principal for the torts of its agents." (*Secci v. United Independent Taxi Drivers, Inc.* (2017) 8 Cal.App.5th 846, 855.)  Agency can arise by virtue of an express agreement, such as where the agent is employed by the principal, or from the manifestation of consent by one person to another that the other shall act on the person's behalf and subject to the person's control, and consent by the other so to act.  (*Ibid.*; *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571.)  The principal must in some way indicate the agent is to act for the principal, and the agent must act or agree to act on the principal's behalf, subject to the principal's control.  (*Secci*, at p. 855.)  The essential characteristic of agency is control.  (*Ibid.*)  Although agency is generally a question of fact, where the facts are undisputed, the existence of

20

an agency may be determined as a matter of law. (*Emery v. Visa Internat. Service Ass'n* (2002) 95 Cal.App.4th 952, 960.)

*Barenborg*, *supra*, 33 Cal.App.5th 70, involved similar facts and issues concerning the direct and vicarious liability of a national fraternity.[8] The plaintiff in that case was injured when, while intoxicated, she fell off a dancing platform at a party hosted by the California Gamma fraternity (Cal. Gamma), a local chapter of the national fraternity. (*Id.* at pp. 73–74.) She sued the national fraternity for negligence. The national fraternity had bylaws that were binding on local chapters, including Cal. Gamma. Under the bylaws, the national fraternity granted charters to local chapters, allowed them to use the national fraternity's insignia and name, and provided resources to local chapters. (*Id.* at pp. 73–74.) The bylaws also required local chapters to pay dues, submit reports, and allow inspections. But the bylaws also said that local chapters were " 'virtually independent,' " had complete control of their own activities, and had no authority to act for or to bind the national fraternity. (*Id.* at p. 74.) Still, the national fraternity had authority to discipline individual members and local chapters and to suspend or revoke a charter. The national fraternity's risk-management policy, which was also binding on local chapters and individual members, prohibited open parties and serving alcohol to underage and obviously intoxicated individuals.

The trial court granted summary judgment in the national fraternity's favor, finding it owed no duty of care to the plaintiff and was not vicariously liable for Cal. Gamma's actions. In affirming that ruling, the Court of Appeal surveyed authority

---

[8] Although cited by the fraternity defendants in the trial court and on appeal, Steagall ignores *Barenborg*.

21

from other jurisdictions relevant to the existence of a special relationship between a national fraternity and its local chapters. (*Barenborg, supra,* 33 Cal.App.5th at pp. 78–79.) That survey showed two themes running through the case law. First, "the existence of general policies governing the operation of local chapters and the authority to discipline them for violations does not justify imposition of a duty on national fraternities." (*Id.* at p. 79.) Second, because national fraternities cannot monitor the day-to-day activities of local chapters contemporaneously, courts have concluded that absent an ability to do so, there can be no duty to control. (*Ibid.*) *Barenborg* thus observed, "Absent an ability to monitor the day-to-day operations of local chapters, the authority to discipline generally will not afford a national fraternity sufficient ability to prevent the harm and thus will not place it in a unique position to protect against the risk of harm." (*Id.* at p. 80.)

*Barenborg* applied these principles to the plaintiff's theory that Cal. Gamma was the national fraternity's agent and, as such, vicariously liable. The Court of Appeal found that the record permitted no reasonable inference that the national fraternity had a sufficient right to control Cal. Gamma's day-to-day activities. (*Barenborg, supra,* 33 Cal.App.5th at p. 85.) The court cited the national fraternity's bylaws providing that the national fraternity had no power to control local chapters' activities or operations, that local chapters were virtually independent of the national fraternity and had complete control of their activities subject to certain duties, and that local chapters had to make their own arrangements as to living quarters. (*Ibid.*) *Barenborg,* at page 86, also disagreed that the national fraternity's rules, risk management policies, and disciplinary

22

powers were sufficient to establish agency: the existence of such standards regulating aspects of local chapters' activities, including disciplinary powers, "did not amount to a right to control" the local chapter's "day-to-day operations or the physical details of a party."

B. *Forfeiture*

Based on cursory cites to agency law, Steagall's argument appears to be that *all* fraternity defendants were Wolder's principal and he, their agent. As an initial matter, this argument is problematic because Steagall does not distinguish between the four fraternity defendants vis à vis any relationship with Wolder or each other. He presents no evidence or argument that any specific fraternity defendant, for example, had any communication with Wolder, participated in Wolder's birthday party, or knew about the party. In short, Steagall has not delineated how each individual fraternity defendant controlled Wolder or the UCLA Chapter such that an agency relationship was created.

This failure to support contentions with reasoned argument and citations to authority and to the record renders the contention forfeited. (See generally *Nwosu v. Uba (*2004) 122 Cal.App.4th 1229, 1246; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [points perfunctorily raised on appeal without adequate analysis and authority may be treated as abandoned]; Cal. Rules of Court, rule 8.204(a)(1)(B).) Where, as here, a party fails to make a reasoned argument, stating instead bare conclusions without supporting them in the context of the record and authority, we do not make arguments for parties.

In addition, Steagall argued in his reply brief on appeal that the fraternity defendants were alter egos of each other. However, we generally do not consider a contention raised for the first time in a reply, partly because the respondent had no opportunity to address it. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) Moreover, Steagall cited no evidence to show the unity of interest between the fraternity defendants that alter ego requires. (See generally *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 [alter ego requires unity of interest and ownership between corporation and its equitable owner such that separate personalities don't exist].) We decline to address any alter ego theory.

Notwithstanding forfeiture, we address vicarious liability on the merits.

C. *The Fraternity*

Relying on *Barenborg*, the Fraternity here argued that it satisfied its burden of establishing there was no triable issue of material fact that the UCLA Chapter and its individual members were not the Fraternity's agents. The Fraternity thus points out that its Bylaws and risk management policy contained similar provisions to the bylaws and policies in *Barenborg*. The Bylaws, for example, empowered the Fraternity to revoke or suspend charters and to expel fraternity brothers and addressed alcohol use by prohibiting open parties, serving alcohol to minors, and playing drinking games. And although the Bylaws did not expressly provide that local chapters control their own activities and had no authority to act for or to bind the Fraternity, its chief executive officer declared that local chapters govern their own affairs, the Fraternity did not control or supervise the UCLA Chapter's day-to-day activities, and local chapters and their

24

members had no authority to act as the Fraternity's agent unless the representation was in writing signed by the Fraternity. This was sufficient to shift the burden to Steagall.

In response, Steagall merely cited back to the Bylaws and risk management policy. He otherwise produced no evidence that the Fraternity controlled the UCLA Chapter or Wolder. In the absence of such evidence, the Bylaws and risk management policies were insufficient to raise a triable issue of material fact that Wolder or the UCLA Chapter were agents of the Fraternity. (See generally *Barenborg*, *supra*, 33 Cal.App.5th at p. 85.)

### D. *The Foundation*

This conclusion applies with perhaps greater force to the Foundation, whose relationship to local chapters like the UCLA Chapter is more attenuated. The Foundation's main purpose was to promote the Fraternity's values through leadership development, partnerships with Jewish organizations, and providing support. As such, the Foundation did not issue charters or rules and policies applicable to the UCLA Chapter; had no daily communications with the UCLA Chapter; had no power to discipline the UCLA Chapter and its members; did not manage, supervise or oversee the UCLA Chapter's and its members' day-to-day activities; and no local chapter or its members had authority to act as the Foundation's agent. By failing to respond to this evidence, Steagall failed to raise a triable issue of material fact as to the Foundation's vicarious liability for Wolder's conduct.

### E. *The House Corporation*

We have already discussed above why there was an insufficient showing that the House Corporation was directly

liable for negligence and premises liability. As for its alleged vicarious liability, the House Corporation's President declared that while it owned the premises where Steagall was injured, it leased rooms to members of the UCLA Chapter and allowed the UCLA Chapter to use the premises as a fraternity chapter house. The House Corporation did not control or supervise the UCLA Chapter's and its members' day-to-day activities and, specifically, did not participate in planning Wolder's birthday party. This evidence was sufficient to shift the burden of producing evidence to Steagall.

He, however, did not introduce any evidence to create a triable issue of material fact. There was no evidence, for example, that people had been injured at parties at the UCLA Chapter in the past, that the UCLA Chapter or any of its members had been disciplined in the past, or that the House Corporation knew about any prior incidents or discipline. In the absence of such evidence, a triable issue of material fact could not be created that the House Corporation, as landlord, was vicariously liable for Wolder's conduct. (See, e.g., *Melton v. Boustred*, *supra*, 183 Cal.App.4th at pp. 537–538 [requisite high degree of foreseeability will rarely be proven in absence of prior similar incidents in cases involving liability for third party's criminal conduct].)

F. *The UCLA Chapter*

The House Corporation leased individual rooms at the premises to members of the UCLA Chapter, and the UCLA Chapter was allowed to use the premises as a fraternity chapter house. As such, Steagall broadly contends that Wolder was the UCLA Chapter's agent.

26

A principal who personally engages in no misconduct may be vicariously liable for a tortious act committed by an agent within the course and scope of the agency. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 513.) The existence and scope of an agency are generally questions of fact. (*Arocho v. California Fair Plan Ins. Co.* (2005) 134 Cal.App.4th 461, 466; *Michaelson v. Hamada* (1994) 29 Cal.App.4th 1566, 1576.)

The UCLA Chapter agrees it could be vicariously liable for Wolder's criminal act of giving alcohol to a minor (see, e.g., Bus. & Prof. Code, § 25658, subd. (a)) if (1) it authorized the commission of the tort or crime, (2) Wolder committed the tort or crime in the scope of his employment or the agency or while performing a service on behalf of the UCLA Chapter, or (3) the UCLA Chapter ratified Wolder's conduct after the fact. (See generally *Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953.) It is inappropriate to impose vicarious liability for an agent's misconduct that does not arise from the principal's enterprise but instead from a personal dispute. (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 291—292 [general rule is employee is not acting in scope of employment when coming and going to work, but there is an exception for a "special errand"].)

The UCLA Chapter asserts that any criminal act Wolder committed was not done in the course of any agency relationship with it. Rather, the party at which Steagall was injured was not a fraternity event; it was Wolder's birthday party. Wolder thus testified at his deposition that he would not call the party "a fraternity party. It was my birthday party, and I lived at the house at the time." This therefore evidenced that the birthday party was not a UCLA Chapter-sponsored event but a private

27

party and not part of the fraternity's "enterprise." (See *Kephart v. Genuity, Inc., supra*, 136 Cal.App.4th at p. 292.)

Steagall, however, simply calls the party a fraternity party in his briefs but cites no law or evidence to support that characterization or that the UCLA Chapter sponsored or was involved in the party. Instead, he cites these facts: (1) Wolder was an adult host of the party, (2) he resided in the fraternity house, (3) he knew Steagall was a minor, (4) he gave Steagall alcohol, and (5) he was a member of the fraternity's judicial board. Even assuming that these facts were undisputed, it is unclear how they show that Wolder's party occurred in the scope of the UCLA Chapter's enterprise. Steagall failed to produce evidence that might have spoken to that issue; for example, what functions did the UCLA Chapter sponsor, what policies or rules did the UCLA Chapter issue to its members, did Wolder sign any leasing agreement that might be relevant, and has Wolder ever been disciplined by the UCLA Chapter?

In the absence of answers to such questions and cogent law, argument, and evidence, Steagall failed to raise a triable issue of material fact as to the UCLA Chapter and any of the fraternity defendants.

## DISPOSITION

The judgments are affirmed.  Respondents may recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


LAVIN, J.


KALRA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.